MUNN, County Treasurer, v. DES MOINES NAT. BANK. SAME v. BANKERS' TRUST CO. SAME v. IOWA LOAN & TRUST CO.

(Circuit Court of Appeals, Eighth Circuit. February 28, 1927.)

Nos. 7266–7268.

1. Appeal and error ⬡1022(3)—Special master's finding on conflicting evidence confirmed by chancellor ought not be disturbed, unless mistake was made in considering evidence or error in applying law.

Finding of special master, who takes testimony and sees witnesses on conflicting evidence in suit in equity, and which is subsequently reviewed and confirmed by chancellor is buttressed by very strong legal presumption, and ought not be reversed or modified by appellate court, unless serious or important mistake of fact has been made in consideration of evidence, or controlling error of law committed in application of law to case.

2. Taxation ⬡12—Tax on bank stock in excess of that on other moneyed capital used in competition with bank capital held denial of equal protection, illegal, and void (Const. U. S. Amend. 14; Comp. St. § 9784; Const. Iowa, art. I, § 6, and art. 8, § 2; Code Supp. Iowa 1913, §§ 1310, 1322—1a).

Under Const. U. S. Amend. 14, Rev. St. § 5219 (Comp. St. §§ 9784), Const. Iowa, art. 1, § 6, and art. 8, § 2, and Code Supp. Iowa 1913, §§ 1310, 1322—1a, taxes against shareholders on their bank stock in excess of levy on actual value of other moneyed capital in hands of individuals used in competition with moneyed capital of banks held denial of equal protection, illegal, and void.

3. Taxation ⬡608(2)—Banks held not estopped to maintain suit to enjoin collecting taxes in excess of that on other moneyed capital because of having loaned money to competitors.

Banks are not estopped from maintaining suit to enjoin county treasurer from collecting taxes from shareholders on bank stock in excess of taxes levied on actual value of other moneyed capital used in competition with bank capital because of fact that they had loaned money to some of their competitors within county.

4. Taxation ⬡608(9)—Adequate remedy to prevent suit to enjoin collecting excessive taxes must be as efficient as in equity and available in federal court.

Adequate remedy available to banks in order to prevent their maintaining suit in court of equity to enjoin county treasurer from collecting excessive taxes must be as practical and efficient to ends of justice and prompt administration as remedy in equity and must be legal remedy in federal court and not merely in state court.

5. Courts ⬡262(2)—Remedy offered by Iowa law to banks for review of excessive assessment held not sufficiently adequate to preclude federal jurisdiction in equity (Code Supp. Iowa 1913, §§ 1360, 1361, 1373, and § 1370, as amended by Acts 39th Gen. Assem. Iowa, c. 92).

Remedy offered to banks under Code Supp. Iowa 1913, § 1373, for review of alleged excessive assessment of capital stock in relation to other moneyed capital used in competition therewith, held not sufficiently adequate in view of sections 1360, 1361, and section 1370, as amended by Acts 39th Gen. Assem. Iowa, c. 92, so as to preclude jurisdiction of federal court in equity to relieve shareholders from discriminatory and illegal taxation, in that it was neither practical nor possible for shareholders or banks themselves to have presented errors of which complaint is made within time required by section 1373.

6. Election of remedies ⬡7(1)—Bank's petition to board of review held not to constitute selection of statutory remedy for adjudication of alleged excessive assessment to exclusion of remedy in federal court of equity (Code Supp. Iowa 1913, § 1373).

Bank's petition to board of review for adjustment of bank's assessment by lowering assessed value of stock or property, and also containing averments that assessment was at greater rate than that applied to moneyed capital in competition, held not to constitute a selection and pursuit of remedy under Code Supp. Iowa 1913, § 1373, for adjudication of issue relative to taxation in excess of that on other moneyed capital used in competition with bank, so as to estop subsequent suit therefor in federal court of equity.

7. Judgment ⬡585(2)—Test of identity of causes of action is identity of facts to maintain them.

Test of identity of causes of action is identity of facts essential to maintain them.

8. Taxation ⬡611(3)—Banks, suing in 1923 to enjoin excessive levy in years 1919, 1920, 1921, and 1922, held not estopped by laches (Comp. Code Iowa 1919, § 7116, subd. 5).

Under Comp. Code Iowa 1919, § 7116, subd. 5, banks, bringing suit in 1923 to enjoin excessive levy on bank shares in years 1919, 1920, 1921, and 1922, held not estopped from bringing and prosecuting them by laches.

Appeal from the District Court of the United States for the Southern District of Iowa; Martin J. Wade, Judge.

Separate suits by the Des Moines National Bank, the Bankers' Trust Company, and the Iowa Loan & Trust Company against Allen Munn, Treasurer of Polk County, State of Iowa, which suits were tried together and consolidated for hearing on appeal. Decrees

for complainants, and defendant appeals. Affirmed.

Fred W. Lehmann, Jr., of Des Moines, Iowa (Ben J. Gibson, Atty. Gen., Maxwell O'Brien, Asst. Atty. Gen., and Reson S. Jones, of Des Moines, Iowa, on the brief), for appellant.

J. G. Gamble, of Des Moines, Iowa (A. B. Howland and R. L. Read, both of Des Moines, Iowa, on the brief), for appellees.

Before SANBORN, Circuit Judge, and WOODROUGH and SCOTT, District Judges.

WALTER H. SANBORN, Circuit Judge. These suits were brought by the appellees, the banks, to enjoin the county treasurer of Polk county, Iowa, from collecting taxes from their shareholders on their stocks in these banks in excess of the taxes that would have been levied on account of those shares in the years 1919, 1920, 1921, and 1922, if the taxes on the actual value of those shares had been levied on the same basis that taxes were levied on the actual value of other moneyed capital in the hands of individuals used in competition with the normal moneyed capital of these banks, taxed and taxable in Polk county during these years. The court below found and adjudged that large amounts of other moneyed capital in the hands of individuals in Polk county, Iowa, were used in substantial competition with the normal business of these banks during the years 1919, 1920, 1921, and 1922, that was habitually and intentionally taxed by the taxing officers of Polk county in each of these years, about five or six times as much in proportion to its actual value as the moneyed capital in the hands of individuals used in competition with the moneyed capital of the banks during those years.

The court below held that these excessive taxes were illegal and void because they were prohibited by the equal protection clause of the Fourteenth Amendment to the Constitution of the United States, by section 5219 of the Revised Statutes (section 9784, Comp. Stat.), which provides that the taxation by a state of the shares of national banking associations "shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state," by section 6 of article 1 of the Constitution of Iowa, which provides that, "all laws of a general nature shall have a uniform operation," by section 2 of article 8 of that Constitution, which provides that, "the property of all corporations for pecuniary profit shall be subject to taxation the same as that of in-

dividuals," and by sections 1310 and 1322—1a, Supplement to the Code of Iowa, 1913.

These three suits were tried together and after the decrees were rendered were consolidated for record and hearing in this court. The nature of the cases and the issues contended and adjudged are practically identical. The Constitution and statutes of Iowa protect the rights of the shareholders of the other two banks to the same extent as the rights of the shareholders of the Des Moines National Bank are protected by section 5219 of the Revised Statutes and the Constitution of the United States. The court referred the cases to a special master, who took the testimony and presented an exhaustive finding of the facts and the law applicable thereto, the court below reviewed that finding and declaration and found that these banks had suffered the grievances they alleged. It accordingly applied to these cases the established and approved remedy for this wrong; it enjoined the treasurer of the county from collecting the excess of these taxes upon the property of the shareholders of these banks above the amounts of the taxes that would have been levied here if the taxing officers had not discriminated against this property. That remedy is prescribed and fixed by the decisions of the Supreme Court in Sioux City Bridge Co. v. Dakota County, Nebraska, 260 U. S. 441, 445, 446, 447, 43 S. Ct. 190, 67 L. Ed. 340, 28 L. R. A. 979; Raymond v. Chicago Union Traction Co., 207 U. S. 20, 35, 37, 28 S. Ct. 7, 52 L. Ed. 78, 12 Ann. Cas. 757; Cummings v. National Bank, 101 U. S. 153, 160, 25 L. Ed. 903; Taylor v. L. & N. R. R. Co. (C. C. A.) 88 F. 350, 374; L. & N. R. R. Co. v. Bosworth (D. C.) 209 F. 380, 462; Washington Water Power Co. v. Kootenai County (C. C. A.) 270 F. 369, 374.

[1] Counsel for the appellant have devoted much time and labor to an endeavor to convince that the evidence in these cases was insufficient to sustain the finding and conclusion that material and substantial amounts of moneyed capital in the hands of individuals were used in Polk county in competition with the moneyed capital or business of these banks during the four years in question and were taxed at the rate of five mills on the dollar of their actual value while the moneyed capital of the banks was taxed at about five or six times that rate on their actual value. We have carefully read the brief of counsel upon these subjects and have examined the evidence in the record, which contains the testimony of more than 200 witnesses, and we are convinced that there was ample evidence

before the master and the court below to sustain their findings and conclusions. The finding of a special master who takes the testimony and sees the witnesses upon conflicting evidence in a suit in equity, and which is subsequently reviewed and confirmed by the chancellor, is buttressed by a very strong legal presumption, and it ought not to be reversed or modified by an appellate court, unless some serious or important mistake of fact has been made in the consideration of the evidence, or a controlling error of law has been committed in the application of the law to the case. We find neither in this case. Tilghman v. Proctor, 125 U. S. 136, 8 S. Ct. 894, 31 L. Ed. 664; Warren v. Keep, 155 U. S. 265, 267, 15 S. Ct. 83, 39 L. Ed. 144; Crawford v. Neal, 144 U. S. 585, 596, 12 S. Ct. 759, 36 L. Ed. 552; Moffatt v. Blake (C. C. A.) 145 F. 40, 41; Coder v. Arts (C. C. A.) 152 F. 943, 946, 15 L. R. A. (N. S.) 372; Boswell Nat. Bank v. Simmons (C. C. A.) 190 F. 735, 736; Paulus v. Buck Mfg. Co. (C. C. A.) 129 F. 594, 597.

[2] The law applicable to this case has been clearly established, and the record satisfies that the court below considered and decided this case in accordance with these opinions and declarations of the Supreme Court. Speaking of other moneyed capital in competition with that of the banks, the Supreme Court said:

"The terms of the act of Congress, therefore, include shares of stock or other interests owned by individuals in all enterprises in which the capital employed in carrying on its business is money, where the object of the business is the making of profit by its use as money. The moneyed capital thus employed is invested for that purpose in securities by way of loan, discount, or otherwise, which are from time to time, according to the rules of the business, reduced again to money and reinvested. It includes money in the hands of individuals employed in a similar way, invested in loans, or in securities for the payment of money, either as an investment of a permanent character, or temporarily with a view to sale or repayment and reinvestment. In this way the moneyed capital in the hands of individuals is distinguished from what is known generally as personal property." Mercantile Bank v. New York, 121 U. S. 138, 157, 7 S. Ct. 826, 836 (30 L. Ed. 895).

In First National Bank v. Anderson, 269 U. S. 341, 347, 348, 46 S. Ct. 135, 138 (70 L. Ed. 295), opinion January 4, 1926, that court said:

"1. The purpose of the restriction is to render it impossible for any state, in taxing the shares, to create and foster an unequal and unfriendly competition with national banks, by favoring shareholders in state banks or individuals interested in private banking or engaged in operations and investments normally common to the business of banking. Mercantile Nat. Bank v. New York, 121 U. S. 138, 155, 7 S. Ct. 826, 30 L. Ed. 895; Des Moines Nat. Bank v. Fairweather, supra [263 U. S. 103, 116, 44 S. Ct. 23, 68 L. Ed. 191].

"2. The term 'other moneyed capital' in the restriction is not intended to include all moneyed capital not invested in national bank shares, but only that which is employed in such way as to bring it into substantial competition with the business of national banks. Mercantile Nat. Bank v. New York, supra, 157; Aberdeen Bank v. Chehalis County, 166 U. S. 440, 461, 17 S. Ct. 629, 41 L. Ed. 1069.

"3. Moneyed capital is brought into such competition where it is invested in shares of state banks or in private banking, and also where it is employed, substantially as in the loan and investment features of banking, in making investments, by way of loan, discount or otherwise, in notes, bonds or other securities with a view to sale or repayment and reinvestment." See Merchants' National Bank v. Richmond, 256 U. S. 635, 41 S. Ct. 619, 65 L. Ed. 1135.

[3] Counsel argue that the decrees below should be reversed, because the banks are estopped from maintaining their suit by the fact that they loaned money to some of their competitors in Polk county. But we discover nothing in that fact, if it existed, which in any way estops them from maintaining the suits before the court below and before us. The objection to the decrees on that account is in our opinion untenable.

Counsel also contend that the court below had no jurisdiction in equity to grant any relief to these banks or their shareholders: (a) Because they had an adequate remedy for the wrongs inflicted upon them here through the board of review, provided by section 1373, Code Supplement of Iowa 1913; (b) because they did not take advantage of that statutory remedy and pursue it to a favorable adjudication; (c) because they did take advantage of that remedy and pursued it to an adverse adjudication of the decisive issues in these cases; and (d) because they have been guilty of fatal laches.

[4] The adequate remedy which will prevent the maintenance in this court of equity of these suits must be "as practical and efficient to the ends of justice and its prompt administration, as the remedy in equity." Boyce

v. Grundy, 3 Pet. 210, 215, 7 L. Ed. 655; Oelrichs v. Spain, 15 Wall. 211, 228, 21 L. Ed. 43; Hayden v. Thompson (C. C. A.) 71 F. 60, 63; Walla Walla v. Walla Walla Water Co., 172 U. S. 1, 12, 19 S. Ct. 77, 43 L. Ed. 341; St. Louis-San Francisco Ry. Co. v. Mc-Elven, 253 F. 123, 135. Such a remedy must also be a legal remedy in the federal court, not merely in a state court. National Surety Co. v. State Bank (C. C. A.) 120 F. 593, 61 L. R. A. 394; Brun v. Mann (C. C. A.) 151 F. 145, 12 L. R. A. (N. S.) 154; Franklin v. Nevada-California Power Co. (C. C. A.) 264 F. 643, 645.

[5] In view of the peculiar facts of these cases, was the remedy offered to the bank by the statutes of Iowa adequate to deprive the federal court of jurisdiction in equity to relieve these shareholders from the discriminatory and illegal taxation imposed upon them? The statutes of Iowa required the assessor to furnish to those having taxable property in the county rolls on which they were required to list their taxable property, state its value and then to return these rolls to the assessor. Code Supplement of Iowa 1913, §§ 1360, 1361. The assessor was required to lay these rolls before the board of review of the county, which in this case was the city council of the city of Des Moines, about the 1st of April in each year, and it required the board of review to go over the assessments with the assessor, fix the amounts of the assessments and complete their duties by about the first of June in each year. Section 1370, Code Supplement 1913; chapter 92, Laws of the 39th General Assembly of Iowa.

After the completion of this joint labor of the board and the assessor the latter was required to make up his books in duplicate from the conclusions of the assessor and the board so that they would show the assessments of the taxable property in the county and to deliver one of these books to the county auditor. In this case there were two classes of property in the county of Polk, one of which under the statutes of Iowa was subject to taxation under what was called the consolidated levy and the other of which was subject to taxation under the five mills levy. The taxation of property under the former exacted from the taxpayer five or six times as much per dollar of actual valuation as the taxation under the five mills rate. The moneyed capital of the shareholders of these banks was taxed in all these years under the consolidated levy, while large amounts of moneyed capital in the hands of individuals that was used in competition with the normal moneyed capital of these banks was taxed under the five mills rate. This illegal discrimination was effected by the county auditor after the assessments had been made by his application of the five mills rate to the assessments of the moneyed capital held and used by individuals in competition with the normal business of the banks.

The remedy for this wrong, the failure of the banks to avail themselves of which counsel claim bars the shareholders of these banks from any relief in these suits, is stated in these provisions of section 1373 of the Code Supplement of Iowa of 1913:

"Any person aggrieved by the action of the assessor in assessing his property may make oral or written complaint thereof to the board of review, which shall consist simply of a statement of the errors complained of, with such facts as may lead to their correction, and any person whose assessment has been raised or whose property has been added to the assessment rolls, as provided in the preceding section, shall make such complaint before the meeting of the board for final action with reference thereto, as provided in said section, and appeals may be taken from the action of the board with reference to such complaints to the district court of the county in which such board holds its sessions, within twenty days after its adjournment. * * * Any officer of a county, city, town, township or school district interested, or a taxpayer thereof, may in like manner make complaint before said board of review in respect to the assessment of any property in the township, city or town, and an appeal from the action of the board of review in fixing the amount of assessment on any property concerning which such complaint is made, may be taken by any of such aforementioned officers."

They rely on the proposition that a taxpayer must exhaust his remedies under the administrative boards before he may have relief by a judicial tribunal and cite many authorities, including First National Bank v. Weld County, 264 U. S. 450, 44 S. Ct. 385, 68 L. Ed. 784, and Griswold Land & Credit Co. v. County of Calhoun, 198 Iowa, 1240, 201 N. W. 11, two opinions perhaps as favorable to their view as any to which they call attention. In these two cases the facts were that the taxing officers had assessed and taxed the property of the complainants too high, higher relatively than the property of other taxpayers of like value was assessed and taxed and these facts appeared on the face of the public records so that when these records were made the complainants were charged with legal notice thereof.

In the former case the assessor fixed the taxable value of the complainant's shares and of the shares of other banks at the market value thereof and the taxable value of other property at 61 per cent. for 1913 and 80 per cent. for 1914 of its market value, and the state tax commission subsequently by order increased the taxable value of the property in the county 63 per cent. in 1913 and 25 per cent. in 1914, without so increasing the taxable value of the property in other counties. In the latter case the property of the complainant had been assessed and taxed higher than property of like character and value of other taxpayers. In each of these cases the property of the complainants had been illegally assessed and taxed too high, and that fact was shown by the public records of which the complainants had legal notice at such times that they could have availed themselves of the remedy offered by the statutes of the state through the administrative boards. It was not so with the shareholders of these banks and the banks themselves. Their grievances were that the property of other taxpayers, taxpayers in whose hands was property that they had used and were using during the years in question in competition with the normal business of these banks, was by the taxing officers illegally taxed too low. That fact, however, did not appear upon the face of any of the public records, because those records did not separate the taxpayers who had used and were using their moneyed capital in competition with the normal business of these banks from those who had not done and were not doing so, and time, search, and extended investigation after the amounts of the taxes in each year were fixed and disclosed by the public records were indispensable to the discovery and statement of their names and their competing property.

Section 1373 of the Code Supplement of Iowa of 1913 required any person aggrieved by the taxation of his or its property to make an oral or written complaint, which should consist "of a statement of the errors complained of, with such facts as may lead to their correction, * * * before the meeting of the board for final action with reference thereto." The assessment books in each of these years were not completed so that a taxpayer could know what the amounts of his assessments and taxes were until within a few days before the final action of the board of review with reference thereto. The time fixed by the statute for a taxpayer to make his statement to the board of review of the errors he complained of with such facts as

18 F.(2d)—18

might lead to their correction was only a few days. It was a very short time. The Supreme Court of that state had held that the taxpayer coming before the board of review for relief must state his grievance "with sufficient particularity and must specify his complaint with sufficient certainty to enable the tribunal, supposing it to possess ordinary intelligence, to comprehend and understand the matters of which complaint is made, and to grant the particular relief sought for in the complaint. He is not entitled to have any question determined on appeal, except such as he called upon the tribunal to determine in the first place." First National Bank v. City of Council Bluffs, 182 Iowa, 107, 112, 113, 161 N. W. 706, 708.

The record in these cases before us shows that the number of instances in which the complainants in this court claim that moneyed capital in the hands of individuals taxable in the county was used in competition with the normal business of these banks and had been illegally taxed at the five mills' rate in the years under consideration was in the hundreds; that the value of the property that they claimed had been thus illegally taxed was more than $6,000,000; that the number of items of such moneyed capital so taxed was many hundreds. The number of witnesses presented to the court below in the hearing of these cases was more than 150. The testimony was condensed and appears in narrative form, and the printed pages of the record are 599. The tribunal to which these banks must present all their alleged errors and complaints, "with such facts as may lead to their correction" (section 1373), was the city council of the city of Des Moines. The Supreme Court of Iowa had declared that, on an appeal from the board of review to the court from the action of this city council, the complainants would not be "entitled to have any question determined on appeal, except such as he called upon the tribunal [board of review] to determine in the first place." 182 Iowa, 112, 113, 161 N. W. 708.

The city council of Des Moines was not a judicial body. The competitors of these banks and their shareholders that had escaped four-fifths to five-sixths of the taxes they should have paid and their employees were not very likely to volunteer testimony or evidence to sustain the claims of these banks, and the city council had no power to issue subpoenas to compel them to testify. It does not seem to us to have been either practical or possible for the shareholders of these banks, or the banks themselves, to have

searched out, learned, and stated to this city council within the times required by section 1373 the errors of which they complained "with such facts as may lead to their correction" (section 1373), much less to have had the city council so determine the questions they present that the complainants could have obtained through the proceeding authorized by section 1373 any just or adequate remedy for the grievances they have presented. In our opinion the facts of these cases, some of which have now been recited, clearly except them from the operation of the proposition that they must exhaust their remedy before the administrative board, because that remedy was not only inadequate but necessarily impractical and futile and the court below had plenary jurisdiction in equity to hear and decide the questions in these cases and to grant adequate relief to the complainants.

[6] Another contention of counsel for the treasurer is that these banks did select and pursue the remedy offered to them by section 1373 to establish the causes of action pleaded in this suit and that in those proceedings those causes of action were finally adjudged against them. In the consideration of this claim we take the case of the Des Moines National Bank and the year 1919 because they are typical of the facts in all the cases in hand. The proceeding relied upon to sustain the position of counsel for the appellant here was commenced by a petition to the board of review by the Des Moines National Bank at some time prior to May 16, 1919, and the only relief prayed in that petition was, not that the board reduce its taxation upon its property to that which it would have been if the moneyed capital of the competitors with its normal banking business had been legally taxed, but that the board adjust the bank's assessment for 1919 by lowering the assessed value of the shares of its stock or property to the extent of the par value $1,442,486 of the securities issued by the United States, which it held and owned on January 1, 1919, and by reducing the assessed value of its property by $62,000, which it owed on account of the German Savings Bank. It is true that the petition in which it asked this relief contained also averments that its assessment subjected its shares in the hands of its shareholders to taxation at a greater rate than that applied to moneyed capital in the hands of individual citizens of the state, and that the Drake Park Bank, Cottage Grove Bank, Oak Park Bank, and Capitol Hill Bank were competitors with it, and that their moneyed capital was in the hands of individuals within the state of Iowa.

But it did not allege the amount of any such moneyed capital in the hands of any of these parties or in the aggregate, so that there was nothing in this pleading which would enable the board to correct any error, if there had been one.

Nor did this petition contain any prayer for any relief on account of the taxation of this competitive moneyed capital or the use of it. The board of review allowed a deduction of $62,000 from the total amount of the capital, surplus and undivided earnings of the bank assessed on account of the bank's obligation based on its indebtedness to the stockholders of the German Savings Bank, and granted no other relief. Thereupon the bank filed a petition in the district court of Polk county, Iowa, against the members of the board of review in which it repeated the averments made in its petition to the board with the exception of the averments about the $62,000. This second petition, however, contained no averment of the amount of moneyed capital of any party or person used or usable in 1919 in competition with the moneyed capital of the bank, or of the aggregate thereof, and its prayer was that the assessment of the bank's property be lowered to the extent of the par value of the securities issued by the United States owned by it on January 1, 1919, and by the amounts of those owned by it for sixty days prior to December 1, 1918, and for such further relief as to the court should seem meet. It contained no prayer for any relief on account of the discriminatory taxation of competitive moneyed capital and no averment of the amount or value of such capital or any part of it. The defendants demurred to this petition, the district court sustained the demurrer, the bank appealed to the Supreme Court of the state, that court reversed the judgment of the district court, and the plaintiffs appealed to the Supreme Court of the United States and that court affirmed the judgment of the Supreme Court of Iowa. Des Moines National Bank v. Fairweather, 191 Iowa, 1240, 1253, 1254, 181 N. W. 459, 184 N. W. 313; Des Moines National Bank v. Fairweather, 263 U. S. 103, 105, 114, 116, 44 S. Ct. 23, 68 L. Ed. 191. But those courts did not consider, discuss, or decide the question whether the petition stated any cause of action on account of discriminatory taxation between the shares of the bank and the moneyed capital in the hands of individual taxpayers used in competition therewith.

We turn now to the causes of action alleged, tried and adjudged in the suit of the Des Moines National Bank against the county

treasurer in hand. It was commenced in the United States District Court in equity on January 20, 1923. In its pleadings it alleged that in 1919 the consolidated levy to which the assessed value of the shares in the bank were subjected was 136 mills on the dollar of their assessed value and that this assessed value was 20 per cent. of their actual value, so that the taxation of these shares was about 27 mills on each dollar of their actual value, while the levy on the other moneyed capital in the county of Polk, held by individuals and used in competition with the business of the bank in the year 1919, was at the rate of 5 mills on the dollar of its actual value. It alleged in detail the rates of taxation used by the taxing officers in 1920, 1921, and 1922, and that in each of the four years the taxation of the shares of these banks was at a rate per dollar of actual valuation five or six times as high as the rate at which other moneyed capital in the hands of individuals used in competition with the business of the bank was taxed.

The bank alleged in its complaint that in 1919 no moneyed capital in the hands of individuals, other than shares of stock in banks not incorporated and a portion of moneyed capital invested in private banking, was assessed or taxed at more than this 5 mills on the dollar of its actual value; that the assessment and taxation of individuals and corporations in the county in 1919 on account of moneys and credits, or moneyed capital, aggregated $24,878,698; that the aggregate amount included in the assessment and taxation against individuals representing the actual value of moneyed capital, evidenced by notes having definite dates of maturity either secured or unsecured by collateral, was $476,194, and it set forth the names of the individuals and the amounts assessed and taxed to each of them. The bank set forth in its pleading the names of the individuals and the amounts of the assessment to each of them, aggregating $2,843,422 of moneyed capital evidenced by notes or other evidences of indebtedness secured by mortgages on real property; that in the assessments for the year 1919 were assessments against 25 individuals representing the net value of moneyed capital evidenced either by notes secured by mortgage or bonds, aggregating $919,814, and it set forth their names and the amount assessed against each. It averred that the assessments for the year 1919 contained assessments of the capital stock of 16 corporations, aggregating $1,860,471, whose business was loaning money upon notes secured by mortgage or unsecured, or upon bonds, representing moneyed capital invested at interest which was used in competition with the normal business of the bank and it set forth the names of each of these corporations and the amount of the assessment against each.

It then pleaded that the moneyed capital which had been described consisting of claims and demands for money receivable at stated periods, due or to become due, and claims and demands secured by deeds and mortgages, due or to become due, and stock of associations or corporations engaged in loaning money at interest and investing their capital in interest-bearing notes, bonds, and securities, was not taxed otherwise than at the 5 mills rate and that under the laws of the state of Iowa it constituted moneyed capital in the hands of individuals, employed, or used in the same manner and in direct competition with the capital, surplus, and undivided earnings, less real estate, of the complainant; that this moneyed capital so in the hands of these individuals was taxed at the 5 mills rate and was not taxed in any other way. It further alleged that if its capital, surplus, and undivided earnings, less the amount invested in real estate, in the year 1919 had been taxed at the rate of 5 mills on the dollar of its actual value—the rate levied against other moneyed capital in the hands of individual citizens of the state—the amount of its tax would have been $3,438.99 in the year 1919, instead of $18,708.13, which was produced by the application to it of the consolidated levy.

[7] Such was the cause of action pleaded in this suit which has resulted in the decree here assailed. The claim of counsel is that by the proceedings of this bank in its former case, the cause of action pleaded and tried in this suit was pleaded and adjudged against the bank. The test of the identity of causes of action is the identity of the facts essential to maintain them. Harrison v. Remington Paper Co. (C. C. A.) 140 F. 385, 400, 3 L. R. A. (N. S.) 954, 5 Ann. Cas. 314; Union Central Life Ins. Co. v. Drake (C. C. A.) 214 F. 536, 545; Pierce v. Natl. Bank of Commerce (C. C. A.) 268 F. 487, 496. Because in that former proceeding instituted before the board of review and continued in the state court the bank did not plead the amount of other moneyed capital in competition with the business of the bank held by any of the parties it named in its pleadings, or the aggregate amount they so held, because in those proceedings the bank did not pray for any relief on account of discrimination against it by the taxation of competitive moneyed capital, because it did not prove any such discrimination, and be-

cause, if any evidence of discrimination in taxation could have been lawfully received under those former pleadings, and we are of the opinion that none could have been over proper objection, radically different evidence and a very large amount of it was indispensable to sustain the cause of action in this case, our minds have been forced to the conclusion that this bank was not estopped by its former proceedings from commencing and prosecuting to a favorable decree the cause of action pleaded by it in this suit.

There are variations between the proceedings of these banks in 1920, 1921, and 1922 and those in 1919, and between the proceedings of the Des Moines National Bank and the proceedings of the other appellees. These proceedings have been carefully examined, but the variations between them warrant no different conclusion upon this question of res adjudicata or estoppel in any of the years or in any of the cases under consideration. The contention of counsel for the appellants upon this issue is overruled.

[8] These suits were brought in 1923 and subsequent years. The complainants were not estopped from bringing and prosecuting them by laches. Compiled Code of Iowa 1919, § 7116—5; Kelley v. Boettcher (C. C. A.) 85 F. 55, 62; Clarke v. Boysen (C. C. A.) 285 F. 122, 127.

Counsel for the respective parties have discussed, and we have carefully considered, other questions than those which have been treated at length in this opinion, but we have been able to find no good reason why the decrees below should not be affirmed, and it is hereby ordered that the decrees in the Des Moines National Bank Case, and in the Bankers' Trust Company and Iowa Loan & Trust Company Cases, which were argued herewith, be and they are affirmed.