**BROTHERHOOD CO-OP. NAT. BANK et al. v. HURLBURT, Sheriff and Tax Collector.**

District Court, D. Oregon. June 18, 1928.

No. E—8911.

1. **Taxation ⬅10, 11—Neither property nor shares of stock of national bank can be taxed by state without consent of Congress.**

National banks are agencies of the general government, and neither their property nor their shares of stock can be taxed by the state without the consent of Congress, and then only in conformity with such restrictions as it may impose.

2. **Taxation ⬅12—Moneyed capital of individuals and corporations loaning money and selling notes and bonds held in competition with national banks, within law requiring equality of taxation (Laws Or. 1925, p. 485; Laws Or. 1921, p. 688; Or. L. § 4253; 12 USCA § 548).**

Moneyed capital in hands of individual citizens and corporations engaged in business of loaning money and selling notes and bonds and other securities for profit, which was not assessed or taxed as especially exempt under Laws Or. 1925, p. 485, or Laws Or. 1921, p. 688, or intentionally and purposely omitted from assessment roll, held to have been employed in a manner which brought it into competition with business conducted by national banks, so that tax on valuation of shares of stock after deducting value of real estate from capital, surplus, and undivided profits, pursuant to Or. L. § 4253, was unlawful as in violation of Rev. St. U. S. § 5219 (12 USCA § 548).

3. **Taxation ⬅608(2)—That investment concerns competing with national banks borrowed money from local banks did not constitute defense to suit to enjoin collection of taxes (12 USCA § 548).**

The fact that many of investment concerns engaged in competition with business of national bank borrowed large amounts of money for use in their business from local banks does not in any way constitute a defense to suit to enjoin collection of taxes levied against shares of stock of national banks, on ground that it was in violation of Rev. St. U. S. § 5219 (12 USCA § 548), requiring equality in taxation as between moneyed capital in hands of individuals engaged in competition with national banks and shares of stock of such banks.

4. **Taxation ⬅607—National banks' request for assessment of stock direct to bank did not estop them from suing to enjoin collection of unlawful tax (12 USCA § 548).**

National banks held not estopped to bring suit to enjoin tax collector from collecting taxes levied against shares of stock, on ground taxes were in violation of Rev. St. § 5219 (12 USCA § 548), because of having requested assessment of stock direct to bank, and not to shareholders, since such request was pursuant to mutual understanding, intended as matter of convenience both to banks and assessor, and cannot be construed as promise to pay any tax which might be levied, legal or not.

5. **Taxation ⬅371½—National banks, furnishing assessor information to make assessments, did not thereby acquiesce and become estopped from questioning validity of taxes.**

Where national banks furnished assessor information required by law, from which he made assessments, they did not thereby acquiesce in assessment, so as to become estopped from questioning validity of taxes, since they had a right to assume that, in making assessments, assessor would comply with law authorizing taxation of their shares.

In Equity. Suit by the Brotherhood Cooperative National Bank and others against T. M. Hurlburt, Sheriff. Decree for plaintiffs.

Sidney J. Graham and J. O. Stearns, Jr., both of Portland, Or., for plaintiffs.

George Mowry, Deputy Dist. Atty., of Portland, Or., for defendant.

BEAN, District Judge. This suit is brought by various national banks located in Portland to enjoin the tax collector of Multnomah county from collecting taxes levied against shares of stock in their banks as of March 1, 1926, on the ground that such taxes are in violation of section 5219 of the federal statute (12 USCA § 548).

[1] The applicable law has been clearly established. National banks are agencies of the general government, and neither their property nor their shares of stock can be taxed by a state without the consent of Congress, and then only in conformity to such restrictions as it may impose. Des Moines Nat. Bank v. Fairweather, 263 U. S. 103, 44 S. Ct. 23, 68 L. Ed. 191; Brotherhood Nat. Bank v. Hurlburt (D. C.) 21 F.(2d) 85.

Congress by appropriate legislation has permitted the taxation by the state of shares of national banks, subject to the restriction that "the tax imposed shall not be at a greater rate than is assessed upon' other moneyed capital in the hands of individual citizens of such state coming into competition with the business of national banks: Provided, that bonds, notes, or other evidences of indebtedness in the hands of individual citizens not employed or engaged in the banking or investment business and representing merely personal investments not made in competition with such business, shall not be deemed moneyed capital within the meaning of this section." Section 5219, R. S. (12 USCA § 548).

The proviso in the section referred to has been held by the Supreme Court to be nothing more than a legislative declaration of a rule prevailing prior to its enactment (Bank. v. Hartford, 273 U. S. 558, 47 S. Ct. 462, 71 L. Ed. 767), and while the restriction does not include moneyed capital representing mere personal investment of individual citizens not employed in substantial competition with the business of national banks, it does embrace that which "is employed, substantially as in the loan and investment features of banking, in making investments, by way of loan, discount, or otherwise, in notes, bonds, or other securities with a view to sale or repayment and reinvestment." Bank v. Anderson, 269 U. S. 348, 46 S. Ct. 138, 70 L. Ed. 295. Or, as said by the court in Bank v. Hartford, supra: "Section 5219 is violated wherever capital, substantial in amount when compared with the capitalization of national banks, is employed either in a business or by private investors in the same sort of transactions as those in which national banks engage and in the same locality in which they do business." And in Minnesota v. Bank, 273 U. S. 567, 47 S. Ct. 470, 71 L. Ed. 774, it "may arise either from the employment of capital invested in a business, even though the competition be with some but not all phases of the business of national banks, or it may arise from the employment of capital invested by institutions or individuals in particular operations or investments like those of national banks."

The aggregate capital, surplus, and undivided profits of the plaintiff banks, March 1, 1926, was approximately $12,000,000. In compliance with the state law (section 4252, Oregon Laws) they each furnished the assessor of Multnomah county a verified statement showing as of that date the amount and number of shares of its capital stock, its surplus and undivided profits, and the amount of real estate owned by it. The assessor, as required by law (section 4253) deducted the value of such real estate from the capital, surplus, and undivided profits, and took the remainder as the valuation of the shares of stock, and assessed them accordingly.

At the time this assessment was made the plaintiff banks owned notes secured by recorded real estate mortgages amounting to approximately $1,000,000, and bonds and stocks and other securities, other than United States bonds and securities, of approximately $15,000,000. By a law of the state notes secured by recorded real estate mortgages and bonds issued for highway purposes are especially exempted from taxation. Laws 1925, p. 485; Laws 1921, p. 688. And by long-continued and systematic practice of the assessor of Multnomah county, and the other counties of the state, bonds of all kinds, although many of them are by law taxable (section 4234, Or. Laws), were intentionally and purposely omitted from the assessment roll. It thus appears that moneyed capital invested in notes secured by recorded real estate mortgages, and in bonds, is either exempt from taxation by law, or intentionally omitted from the assessment rolls and pays no taxes.

During the year ending March 1, 1926, there were recorded in Multnomah county real estate mortgages securing promissory notes amounting in the aggregate to approximately $60,000,000, and on March 1st of that year there was of record such mortgages securing at least $90,000,000 held by residents

of Oregon, principally of Multnomah county. There had been issued by the state and were outstanding on March 1, 1926, approximately $34,000,000 highway bonds, which were owned largely by citizens of the county and state, and in addition at least from $75,000,000 to $100,000,000 in corporate and municipal bonds had been purchased and sold during the year by local concerns, a large portion of which were sold to and owned by citizens of the state and county. The moneyed capital invested in these securities was either exempt by law from taxation, or purposely and intentionally omitted from the tax roll, and none of it, except such as may have been included in the valuation of the bank stock, was assessed for taxation purposes.

That the moneyed capital so invested was substantial in amount as compared with the capital of plaintiff banks is apparent, but the defendant argues that it does not appear that it was in substantial competition with the business of the national banks. The evidence shows that the plaintiff banks, in the course of their business, receive deposits, make loans, buy and sell notes, government, and other bonds, discount commercial paper, and acquire real estate mortgages by loans and purchase.

On the trial plaintiffs called witnesses who gave testimony, uncontradicted by the defendant, showing that on March 1, 1926, there were numerous domestic financial and investment corporations and individuals in the vicinity of plaintiff banks engaged in the business of loaning money to individuals, and acquiring and selling notes and bonds, mortgages and other securities, for profit. Loans made by them during the preceding year amounted to from $5,000,000 to $10,000,000, and the bonds and securities bought and sold by them from $75,000,000 to $100,000,000. The money thus loaned and the bonds bought and sold were with a view to reinvestment, and were in competition with the business of national banks. Substantial capital was employed in such business. Neither the capital of these companies nor their shares of stock or bonds held by them were assessed or taxed.

By the laws of Oregon the shares of every corporate bank, including national banks, located in the state and engaged principally in banking, are assessed and taxed on the value of their shares (section 4251, Oregon laws), the basis for the valuation thereof being the aggregate amount of capital, surplus, and undivided profits of the bank, less the real estate owned by it (section 4253). Other companies, associations, or corporations en-

gaged in (but not as their principal business) the business of banking, lending money, or receiving money on deposit, buying and selling stocks, bonds, and other evidences of indebtedness with a view to profit are taxed on the aggregate amount of money on hand, in bank or in transit, checks, and other cash items, and the value of bills receivable, etc., stocks and bonds, etc., held as an investment, and other property pertaining to the business, except real estate. Section 4251.

The evidence shows that on March 1, 1926, there were domestic finance and investment companies in Portland not engaged principally in banking, but in buying and selling stocks, bonds, and other securities, with an aggregate of capital, surplus, and undivided profits of $6,000,000. The total assessment of these companies for the year was $114,410, and the tax paid by them was $5,250.44. If their shares of stock had been assessed and taxed on the same basis as the shares of plaintiff banks, the resulting tax would have been $167,925.21. One of such companies, with a capital stock, surplus, and undivided profits greater than $1,000,000, doing business in Portland, bought and sold during the year ending March 1, 1926, approximately $18,000,000 worth of bonds and other interest-bearing securities, and made loans on real estate mortgages in Multnomah county of approximately $240,000. This concern was only assessed for $11,830 on money, notes, and accounts and office furniture, and paid taxes of $544.18, while, if its stock had been assessed on the same basis as plaintiff banks, the resulting tax would have been $32,929.10.

The total assessed value of money, notes, and accounts in the state as of March 1, 1926, was $17,109,812, and in Multnomah county $14,501,630, while the evidence shows that during the preceding year there had been invested by citizens of the state with domestic and foreign corporations approximately $135,000,000 in the purchase of bonds, stocks, and other interest-bearing securities, and a like amount the succeeding year. And in addition there was invested through such companies from $5,000,000 to $10,000,000 in recorded real estate mortgages. The total amount of shares of stock assessed in the state for the year was $13,312,757.50, and in Multnomah county $6,367,030; the entire assessment of shares of stock in Multnomah county, with the exception of $38,760, being shares in banks.

[2] I conclude, therefore, that moneyed capital in the hands of individual citizens and corporations, amounting to many hundreds

of thousands of dollars, which was not assessed or taxed, was employed in a manner which brought it into competition with the business conducted by national banks, including the plaintiff banks, and for that reason the tax on plaintiff's shares was unlawful.

[3] The evidence shows that many of these investment concerns borrowed large amounts of money for use in their business from the local banks, but, as held in Munn v. Bank (C. C. A.) 18 F.(2d) 271, there is nothing in that fact which in any way constitutes a defense to this suit.

The defendant argues that plaintiffs are estopped from the prosecution of this suit, because they requested the assessor to make the assessment of their shares directly to the bank, and agreed to pay the taxes thereon, and hold the assessor harmless from any irregularity in the form of assessment, and that they had actual or constructive notice of how assessment of the property in the county was made, and acquiesced therein, and took no steps to have the matter reviewed or considered by the county board of equalization or county authorities.

[4] The letters of the banks to the assessor, requesting that the assessment of their stock be made direct to the banks, and not to the shareholders, was in pursuance of a mutual understanding between the banks and the assessor, and was intended as a matter of convenience, both to the banks and to the assessor, and clearly cannot be construed as a promise on the part of the banks to pay any tax which might be levied, whether legal or not. They had a right to assume, and no doubt did assume, in writing the letter, that the shares in their banks would be assessed according to law, and that the tax levy thereon would be legal.

[5] Nor, in my opinion, is there any merit in the contention that plaintiffs have acquiesced in the assessment, and thereby become estopped from questioning the validity of the taxes. They have done nothing in the premises except to furnish to the assessor the information required by law, from which he made the assessments. They had a right to assume that in doing so he would comply with the law authorizing the taxation of their shares. They had no control over his actions, and did nothing to mislead him or the county authorities. Moreover, the evidence shows that they did not know the actual manner in which the property of the county was assessed until a short time before this suit was commenced.

The plaintiffs are not complaining because their shares were overvalued, or that competing moneyed capital was undervalued as compared with the bank shares, but that such capital was not assessed at all. The assessing officers, of course, had no authority to assess notes and bonds which are by law exempt from taxation, and to require plaintiffs to appear before the assessing officers, or the board of equalization, to have other competing capital assessed, would be to deny them any remedy, because it would be impossible for them, in the nature of things, to secure an assessment of the great mass of nonassessed property. Sioux City Bridge Co. v. Dakota Co., 260 U. S. 446, 43 S. Ct. 190, 67 L. Ed. 340, 28 A. L. R. 979.

It follows, therefore, that the plaintiffs are entitled to a decree; and it is so ordered.