**BOISE CITY NAT. BANK v. ADA COUNTY et al.**

District Court, D. Idaho, S. D. January 4, 1930.

No. 1394.

948

Richards & Haga, of Boise, Idaho, for plaintiff.

Carl A. Burke and Clarence T. Ward, both of Boise, Idaho, for defendants.

CAVANAH, District Judge. The Boise City National Bank, a national banking association, seeks to recover from Ada county and its treasurer and tax collector the sum of $7,537.37, which it had paid under protest to the tax collector as taxes levied and assessed for the year 1928 against the capital shares of its stock, on the ground that such taxes are in violation of section 5219 of the U. S. Revised Statutes, as amended (12 USCA § 548), and the Fourteenth Amendment to the federal Constitution guarantying to the plaintiff the equal protection of its laws.

The questions for decision are presented upon defendant's demurrer to the complaint, where it is contended that the plaintiff is not the proper party to bring the action, and that the complaint does not state sufficient facts to entitle it to recover. The statutes of Idaho make the bank liable for the payment of the taxes assessed to its stockholders under penalties, as it is compelled to pay the same (section 3302, Ida. Comp. Stats. 1919; Shainwald v. First Nat'l Bank, 18 Idaho, 290, 109 P. 257), and the owners of the shares are liable to the bank for the taxes so paid, and the bank is given a lien on the stock for the amount paid. Section 3303, Ida. Comp. Stats. 1919. As the liability is imposed on the bank for the payment of the tax, and it was paid by it under protest, it seems clear that, such amount now held by the collector being the money of the bank; the bank is the real party in interest in a suit to recover its own funds which it claims is illegally held by the defendants. Hannan et al. v. First National Bank of Council Bluffs (C. C. A.) 269 F. 527.

The principal question for decision is, Are the facts disclosed by the complaint sufficient to show a violation of the federal statute authorizing the taxation of national bank shares within the restriction often considered by the Supreme Court in First National Bank v. Anderson, 269 U. S. 341, 46 S. Ct. 135, 138, 70 L. Ed. 295; First National Bank v. Hartford, 273 U. S. 548, 47 S. Ct. 462, 71 L. Ed. 767, 59 A. L. R. 1; State of Minnesota v. First National Bank of St. Paul, 273 U. S. 561, 47 S. Ct. 468, 71 L. Ed. 774; Montana National Bank v. Yellowstone County, 276 U. S. 499, 48 S. Ct. 331, 72 L. Ed. 673; Brotherhood Co-op. National Bank v. Hurlburt (D. C.) 21 F.(2d) 85, and Id. (D. C.) 26 F.(2d) 957, and Bonaparte v. American-First National Bank (Okl. Sup.) 281 P. 958?

It clearly appears from the complaint that at the time this assessment was made, the plaintiff, in the course of its business, made loans in large amounts aggregating $2,000,000 in the state on notes or personal obligations of the borrowers, and on notes secured by mortgages on both real and personal property, and also purchases, sells, and deals in bonds and commercial paper; that on January 9, 1928, and ever since, it had had capital surplus and undivided profits aggregating $457,722.22 and also loans and discounts in the sum of $2,762,183.89, a large amount of which consists of mortgages on real and personal property; that on and ever since that date it has owned bonds issued by the United States aggregating $450,000, and treasury notes in excess of $420,000, which notes and bonds provide that they shall be exempt from taxation by the state; and that it further owned, on that date, municipal bonds and warrants in the sum of $144,000 and stock in the Federal Reserve Bank to the amount of $13,500, and its capital, surplus, and undivided profits were invested in that class of securities, except what is invested in real estate and its furniture and fixtures.

It is further alleged that during the year 1928 the assessor of the county, pursuant to an act of the state Legislature approved February 28, 1927 (Laws 1927, c. 84), amending section 3297 of the Compiled Statutes, relating to the assessment of bank stock for taxation, assessed 3,750 shares of the capital stock of plaintiff, on the basis of the actual value of such stock as shown by the capital and surplus of plaintiff on January 9, 1928; and that the only deduction from its capital stock and surplus allowed by the assessor was its real estate, furniture and fixtures, which were separately assessed as other property. Its capital and surplus was $456,822.72, and the value of its real estate, furniture, and fixtures was $253,346.25, leaving $203,476.47 of its capital and surplus invested in its bonds, warrants, notes, and mortgages, which was assessed by the assessor under the state law in question, and the

tax of $7,537.37 was levied on the capital shares of stock of the plaintiff. The total of the capital, surplus, and undivided profits of the national banks in the state on January 9, 1928, was the sum of $5,000,000, and of which amount there is $1,400,000 of such banks doing business in Ada county. On January 9, 1928, there was in the state $30,-000,000, of which amount $5,000,000 was in the hands of and owned by individuals, partnerships, corporations and other forms of associations of capital not classified as banks or embraced within the provisions of section 3297, of the state statutes as amended, and that such capital was moneyed capital employed by individuals and came into substantial competition with the plaintiff and other national banks, and no tax was levied on the same, for under chapter 145, Session Laws 1927 of the state, they are exempt from taxation; but, notwithstanding such provision exempting such capital the plaintiff and other national banks are taxed and assessed on the basis of the value of their capital stock, which is invested in the securities mentioned. The practice for many years on the part of all assessors in the state and other officials charged with the duty of administering the tax laws was to not assess or levy a tax against money, notes, mortgages, stock, bonds, and other securities commonly dealt in by banks and investment companies and moneyed capital in competition with banks, except as the same are taxed under section 3297, as amended, by assessing the shares of the capital stock of banks.

■ Further, it is averred that by reason of the state statute in question an unfair and unjust burden is placed upon the plaintiff and other banks, and an unjust discrimination under said law, as amended, exists in favor of other moneyed capital in competition with banks. Section 5219 of Revised Statutes of the United States, as amended, being now section 548 of title 12, USCA, sanctions the taxation of shares in national banks, but subject to the restrictions that "the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state." The purpose of the restriction is to prevent any state, in taxing the shares of banks, from creating an unequal competition with national banks, by favoring individuals engaged in operations or investments common to the business of banking. The phrase "other moneyed capital" does not embrace all moneyed capital not invested in bank shares, but "only that which is employed in such way as to bring it into substantial competition with the business of national banks." First National Bank v. Anderson, supra. The important question, therefore, presented by the complaint, is whether the tax imposed upon the shares of stock of plaintiff under the Idaho statutes is at a greater rate than that imposed upon other moneyed capital owned by individual citizens of Idaho and employed in substantial competition with national banks.

■ By section 3297 of the Idaho Statutes, as amended by the Legislature in 1927 (Laws 1927, c. 84), the shares of stock of national banks are assessed upon the same basis of actual value, and all dues and credits secured by mortgages, trust deeds, or other liens are included in the assets and reflected in the value of the stock. Section 3099 of the state statutes, as amended by the act of 1927 (Laws 1927, c. 145), exempts from such taxation "all dues and credits secured by mortgages, trust deeds or other liens," except when held by banks.

The taxing authorities, acting under these provisions of the statute, levied the tax in question, but made no assessment upon dues and credits secured by mortgages, trust deeds, or other liens on moneyed capital employed by individual citizens coming into substantial competition with the business of national banks.

From the facts thus stated, and the provisions of the statutes cited, it appears that a greater rate of taxes was levied upon the shares of stock of plaintiff than is assessed upon other moneyed capital in the hands of individual citizens, and that an unjust and unfair discrimination exists in favor of moneyed capital and capital investments within the state dealt in by others in substantial competition with the business of national banks, and against that invested in shares in banking associations. In fact it must be conceded that the local statute is discriminatory. If the facts recited in the complaint are true, which are admitted by the demurrer, then there can be but one conclusion reached—that the tax in question violates section 5219 of the Revised Statutes of the United States, as amended (12 USCA § 548), as a greater rate of taxation is levied on the shares of stock of plaintiff than is assessed upon other moneyed capital in the hands of individual citizens of the state, which is in substantial competition with the business of national banks, and discriminates in favor of such moneyed capital and against that invested in shares in national banking

associations. The averments of the complaint are directed to the character of the competition, as it is there alleged that national banks in the state having a capital and surplus in large amounts are engaged in the business of making loans, and that there is an extensive loan business in the state not subjected to the tax burden of national banks which come in competition with the business of the plaintiff and other national banks. The manner of the employment of the capital at the command of those who, it is charged, are employing their capital in competition with national banks is the test, and not the character of the business of those who compete.

The Supreme Court, in the case of First National Bank v. Anderson, supra, in interpreting section 5219 of the federal statutes, in cases where the facts and state statutes are similar to the present case, and which has been followed by that and other courts, above referred to, said: "National banks are not merely private moneyed institutions, but agencies of the United States created under its laws to promote its fiscal policies; and hence the banks, their property and their shares cannot be taxed under state authority, except as Congress consents, and then only in conformity with the restrictions attached to its consent." The principle announced in the Anderson Case was approved by that court in the case of First National Bank v. Hartford, supra, where, at page 560 of 273 U. S., 47 S. Ct. 462, 466, 71 L. Ed. 767, 59 A. L. R. 1, it is said: "Finally it is said that section 5219 is directed to an unfriendly discrimination or hostile attitude on the part of a state, and that here the Wisconsin legislation was not dictated by such considerations, since the challenged exemptions were merely incidental to the adoption of a state policy of substituting, so far as possible, an income for a personal property tax. But a consideration of the entire course of judicial decision on this subject can leave no doubt that state legislation and taxing measures which by their necessary operation and effect discriminate against capital invested in national bank shares in the manner described are intended to be forbidden."

Taking all of the facts alleged in the complaint into account, and from what has been said, the tax levied and collected in this case is unauthorized by the federal statute, and an unfair discrimination exists in favor of moneyed capital owned by individuals and others than banks, and against that invested in shares in national banks, which is in violation of both the letter and spirit of the restriction contained in the federal statute, and is therefore void.

The demurrer will be overruled.