BOISE CITY NAT. BANK v. ADA COUNTY et al. (two cases).

Nos. 1394, 1556.

District Court, D. Idaho, S. D.

Feb. 11, 1931.

Richards & Haga, of Boise, Idaho, for plaintiff.

Carl A. Burke, Clarence T. Ward, and Frank T. Wyman, all of Boise, Idaho, for defendants.

CAVANAH, District Judge.

These cases were consolidated and heard together by the court, a jury having been waived. They present the question of whether, under the evidence, the taxes levied on the shares of stock of plaintiff, a national banking association, for the years 1928 and 1929

by the assessor of Ada county, are in violation of section 5219 of the Federal Revised Statutes (12 USCA § 548). The application of the law was settled in the opinion of the court on the demurrer to the complaint in case No. 1394 [(D. C.) 37 F.(2d) 947], and the cases are now being considered upon the issue as to whether the evidence is sufficient to establish the causes of action alleged in the complaints.

Approaching then the consideration of them with the settled principle in mind that Congress has only permitted the taxation by the state of property and shares of stock of national banks, subject to the restriction that "the tax imposed shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such State coming into competition with the business of national banks: Provided, That bonds, notes, or other evidences of indebtedness in the hands of individual citizens not employed or engaged in the banking or investment business and representing merely personal investments not made in competition with such business, shall not be deemed moneyed capital within the meaning of this section" (section 5219, R. S.; 12 USCA § 548), the court is asked to declare the assessments void on the ground that moneyed capital is not assessed in the hands of others who are not engaged in the banking or investment business in the state and who come in competition with the business of plaintiff.

The competition contemplated by the federal statute does not have to be with all phases of the business of national banks, for it may arise from the employment of capital invested by individuals or institutions in particular investments or operations like those of national banks. By the statute the federal government permits state taxation only on terms of substantial equality in fact and in law, in entire fairness, and the tax on shares of national banks must not discriminate in favor of moneyed capital entered into competition with them. Exact equality from a mathematical standpoint is not intended by the statute, for such may not be attainable in every case. The main purpose of the legislation is stated to be by the Supreme Court in Mercantile National Bank v. New York, 121 U. S. 138, 155, 7 S. Ct. 826, 835, 30 L. Ed. 895: "A tax upon the money of individuals, invested in the form of shares of stock in national banks, would diminish their value as an investment, and drive the capital so invested from this employment, if at the same time similar investments and similar employments,

under the authority of state laws, were exempt from an equal burden. The main purpose, therefore, of congress, in fixing limits to state taxation on investments in the shares of national banks, was to render it impossible for the state, in levying such a tax, to create and foster an unequal and unfriendly competition, by favoring institutions or individuals carrying on a similar business and operations and investments of a like character. The language of the act of congress is to be read in the light of this policy." So the inquiry here is: Does the evidence show that there were during the years in question other moneyed capital in the hands of individual citizens of the state that came in competition with the business of the plaintiff national bank, and not taxed? During that period plaintiff exercised the normal banking powers conferred upon it by law, including the purchase and sale of government, state, and municipal bonds, the loaning of money on financial statements and on real and personal security, and receiving commercial deposits on demand and time savings deposits.

The capital, surplus, and undivided profits of plaintiff of January, 1928, was approximately $456,822.72, and of January, 1929, $460,076.52. As required by the statutes of the state, the assessor of Ada county secured from plaintiff the amounts and number of shares of its capital stock, its surplus and undivided profits, and the amount of real estate, furniture, and fixtures owned by it. After so doing, he deducted the value of such real estate, furniture, and fixtures, which were assessed separately as other property from its capital, surplus, and undivided profits, and the remainder was accepted by him as the valuation of the shares of stock, and assessed accordingly. On January 9, 1928, the time the assessment was made, plaintiff's total loans aggregated $9,016,218, of which $125,806 consisted of mortgages on real estate, $133,370 to farmers, $114,030 to orchard owners, and $323,368 on automobile paper. It purchased in 1928 bonds of approximately $503,450, and owned in government securities $890,450, in other securities $222,713, and stock in the Federal Reserve $13,500. In 1928 it sold $160,200, and in 1929 $276,050, in bonds and other securities to residents of Idaho, and purchased in 1928 $90,000, and in 1929 $275,000, in commercial paper. During the same period it purchased and sold $100,000 of the preferred stock of the Idaho Power Company, while approximately $631,000 of said stock was sold by investment houses in Idaho. Pursuant to

section 3297, Comp. Stats. of the state, relating to the assessment of shares of bank stock for taxation, the assessor assessed 3,750 shares of the capital stock of the plaintiff then outstanding, on the basis of the actual value of such stock as shown by the capital, surplus, and undivided profits of plaintiff on January 9, 1928, which was $456,822.72, less the value of its real estate, furniture, and fixtures. The value of its real estate, furniture, and fixtures on that date was $253,346.28, leaving $203,476.47 of its capital and surplus invested in bonds, notes, mortgages, and warrants, which was assessed and a tax levied thereon of $7,537.37. The tax was paid by plaintiff under written protest, and defendants declined to repay the same.

The facts referred to apply to case No. 1556, relating to the taxable year 1929, except as to dates and amounts, which appear to be different, as we find for that year, on January 14, 1929, plaintiff had loans and discounts aggregating $8,683,998, of which $162,459 consisted of mortgages on real estate, $173,572 to farmers, $116,321 to orchard owners, and $327,428 on automobile paper. It purchased bonds of approximately $216,900, owned in government securities $905,600, in other securities $313,400, and stock in Federal Reserve $13,500, and that the assessor of the county for that year assessed 3,750 shares of its capital stock on the same basis as was done for the year 1928, which was $460,076.52, after deducting the value of the real estate, furniture, and fixtures. The value of the real estate, furniture, and fixtures on that date was $290,979.72, leaving $169,096.80 of its capital and surplus invested in bonds, notes, mortgages, and warrants, which was assessed and a tax levied thereon in the amount of $6,635.72. That tax was also paid by the plaintiff under written protest and defendants declined to repay the same. Plaintiff has for years maintained a savings department in which it pays interest at the rate of 4 per cent. per annum. Its deposits of January, 1928, which covered commercial, savings, and postal savings, totaled $4,790,124.89, and of January, 1929, $4,619,963.81.

It is apparent that the moneyed capital invested in securities in the state by others than banks during the years 1928 and 1929 were exempt by the state law of taxation, and intentionally omitted from the tax rolls, and were substantial in amount as compared with the capital of plaintiff bank, and in competition with national banks, for it appears that during these two years there was so invested, in bonds and stocks, approximately from $18,000,000 to $30,000,000, of which amount approximately $5,000,000 was by investors in Ada county, as there were numerous individuals and foreign and domestic investment corporations engaged in the state for profit in loaning money and acquiring and selling notes, bonds, stocks and mortgages, and obtaining the savings and surplus funds of investors. Among those were investment houses, savings and loan associations, building loan companies, insurance companies, real estate mortgage loan companies, and finance companies handling automobile and other paper, who in many instances had a paid-in capital and volume of business done by them, in direct competition with plaintiff bank, in substantial amounts, as we find among them that Childs & Co. sold bonds aggregating from several hundred thousand dollars to over a million dollars; Walter S. Bruce & Company in amount in excess of the amount sold by plaintiff; High & Fritchman Company, dealers in similar securities in large amounts; People's Finance & Thrift Company, a paid-in capital of $63,800, sold approximately $84,000 of bonds; insurance companies holding securities, in bonds and mortgages, of approximately $11,118,541.04, and made new loans during the year of $874,165.93, and collected on former loans $1,631,176.23; the Oregon Mortgage Company, a paid-in capital of $2,433,250, surplus and undivided profits of $886,100, and invested in mortgages $1,362,472; the Scottish American Mortgage Company, a paid-in capital of $6,189,097, surplus and undivided profits of $1,866,055, and mortgage loans of $370,132; and the Vermont Loan & Trust Company, a paid-in capital of $300,000, and mortgage loans of $300,000. Savings and loan companies and building and loan associations and mortgage loan companies, operating in the state, had loans of similar character and far in excess of that of the plaintiff, and finance companies handling installment automobile and other paper, aggregating approximately $7,359,110.52, among which were the General Motors Acceptance Company, Commercial Credit Corporation, Commercial Investment Company, National Credit Company, and Pacific Finance Company.

Applying the facts in these cases to the principle laid down in the former opinion of the court in case No. 1394, Boise City Nat. Bank v. Ada County et al. (D. C.) 37 F.(2d) 947, and in Brotherhood Co-op. Nat. Bank et al. v. Hurlburt (D. C.) 26 F.(2d) 957; Commercial Nat. Bank of Columbus, Ohio, et al. v. Treasurer of Franklin County, Ohio (D. C.)

45 F.(2d) 213; Public Nat. Bank of New York v. Keating et al. (D. C.) 38 F.(2d) 279, there has been in the years 1928 and 1929 substantial discrimination against a large portion of the moneyed capital invested in the shares of stock of the plaintiff bank, and in favor of competing moneyed capital invested in the companies and in the hands of individuals referred to, in violation of the federal statutes, which requires the cancellation of the taxes so levied, and accordingly a decree in each case will be entered in favor of plaintiff as prayed for.