## FIRST NATIONAL BANK OF HARTFORD, WISCONSIN, *v.* CITY OF HARTFORD ET AL.

ERROR TO THE SUPREME COURT OF THE STATE OF WISCONSIN.

No. 186. Argued December 13, 1926.—Decided March 21, 1927.

1. Upon review of a judgment of a state court sustaining a discriminatory state tax on national bank shares upon the ground that the other moneyed capital, favored by the discrimination, was not employed in competition with the business of the national bank, this Court may review the evidence regarding such competition and is not concluded by the finding of the state court. P. 552.

2. The validity, under Rev. Stats. § 5219, of a state tax on national bank shares at a greater rate than that assessed on other moneyed capital depends upon whether or not the moneyed capital thus favored is employed in such a manner as to bring it into substantial competition with the business of national banks. P. 552.

3. The requirement of approximate equality in taxation (R. S. § 5219) is not limited to moneyed capital invested in state banks or to competing capital employed in private banking; it applies wherever capital, substantial in amount compared with the capitalization of national banks, is employed in a business, or by private investors, in the same sort of transactions as those in which national banks engage and in the same locality in which they do business. Pp. 555, 557.

4. The amendment of § 5219, by Act of March 4, 1923, merely expressed what was previously implied, and by its terms excludes from "moneyed capital" only those personal investments which are not in competition with the business of national banks. P. 557.

5. Proof of competition by untaxed capital involves showing that it is employed in such investments as are open to national banks. P. 558.

6. In this case the evidence shows substantial competition with national banks by untaxed capital in the business of making loans and selling credits and also by capital of private individuals who, as investors of surplus funds, were engaged in lending money at interest on real estate mortgages and other evidences of indebtedness, normal to banking. P. 558.

7. To establish the fact of competition, it is not necessary to show that national banks and the other investors solicit the same customers for the same loans or investments. It is enough if both engage in seeking and securing in the same locality investments of the class described which are substantial in amount. P. 559.

8. The sale of real estate mortgages and other evidences of debt acquired by way of loan or discount with a view to reinvestment is within the incidental powers of national banks. P. 559.

9. The fact that discrimination against national bank shares is not unfriendly or hostile but is induced by the state policy of substituting income taxes for personal property taxes, does not render Rev. Stats. § 5219 inapplicable. P. 560.

187 Wis. 290, reversed.

ERROR to a judgment of the Supreme Court of Wisconsin in a suit brought by the bank to recover from the City of Hartford the amount of a tax assessed and collected upon shares of its stock. The court below reversed a judgment for the plaintiff and directed the trial court to enter a judgment dismissing the complaint.

*Mr. Arthur W. Fairchild,* with whom *Messrs. George P. Miller, Edwin S. Mack, J. Gilbert Hardgrove,* and *E. W. Sawyer* were on the brief, for plaintiff in error.

*Mr. Edward J. Dempsey,* with whom *Messrs. Herman L. Ekern,* Attorney General of Wisconsin, *Franklin E. Bump,* Assistant Attorney General, *Edward M. Smart,*

*J. C. Russell,* and *Lloyd Mitchell* were on the brief, for defendants in error.

MR. JUSTICE STONE delivered the opinion of the Court.

Plaintiff in error, a national banking association doing business in Wisconsin, brought suit in the circuit court of Washington County, Wisconsin, to recover from the defendant in error, the City of Hartford, a tax assessed and paid for the year 1921 upon shares of stock in plaintiff bank, on the ground that the assessment and tax were prohibited by § 5219 of the Revised Statutes of the United States (Act of June 3, 1864, c. 106, 13 Stat. 99, 112; Act of February 10, 1868, c. 7, 15 Stat. 34). The tax having been paid under protest, a suit for its recovery, raising the legality of the assessment, is permitted by local statutes. Wis. Stat. 1923, § 74.73.

The trial court held the assessment illegal and gave judgment for the plaintiff. On appeal, the Supreme Court of Wisconsin reversed the judgment with a direction to the court below to enter judgment in favor of the defendant, dismissing the complaint. 187 Wis. 290. The case comes here on writ of error under § 237 of the Judicial Code. *Merchants' National Bank* v. *Richmond,* 256 U. S. 635, 637; *First National Bank* v. *Anderson,* 269 U. S. 341, 346.

The contention here is that the State Supreme Court erred in holding that these tax statutes are not repugnant to § 5219 Revised Statutes.

" National banks are not merely private moneyed institutions but agencies of the United States created under its laws to promote its fiscal policies; and hence the banks, their property and their shares cannot be taxed under state authority except as Congress consents and then only in conformity with the restrictions attached to its consent." *First National Bank* v. *Anderson, supra,* 347; *Des Moines Bank* v. *Fairweather,* 263 U. S. 103, 106. Con-

gress, by appropriate legislation, has permitted the taxation of shares in national banks subject to certain restrictions. Section 5219 sanctions such taxation in the state where the bank is located, subject to the restriction that "the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such State." By decisions of this Court construing this language, it is established that the phrase "other moneyed capital" does not embrace all moneyed capital not invested in bank shares, but "only that which is employed in such way as to bring it into substantial competition with the business of national banks." *First National Bank* v. *Anderson, supra,* 348. Hence the question presented by this record is whether the tax imposed upon the shares of stock of plaintiff under the Wisconsin statutes is at a greater rate than that imposed upon other moneyed capital in the hands of individual citizens of Wisconsin employed in substantial competition with national banks.

By § 70.31 of the Wisconsin statutes, an *ad valorem* tax is assessed upon all shares of banks, including national banking associations, as personal property within the assessment district in which the bank is located. Section 70.11 exempts from such taxation "all moneys or debts due or to become due to any person and all stocks and bonds, including bonds issued by any county, town, city, village, school district, or other political subdivision of this state, not otherwise specially provided for."

Acting under these statutes, the taxing authorities imposed the tax now in question, but made no assessment and levied no tax upon credits or intangible property other than the shares of stock in banking corporations. The State of Wisconsin imposes a tax upon incomes, including incomes derived from credits. The court below assumed, and it was not questioned upon the argument here, that this tax is not to be taken as an equivalent or

substitute for the *ad valorem* tax levied upon bank shares and no question of the possible equivalence of the two schemes of taxation is presented. From the sections cited, it appears that the tax statutes of Wisconsin discriminate in favor of moneyed capital and capital investments within the state, represented by credits or intangibles, and against that invested in shares in banking corporations.

But it is not sufficient to show this discrimination alone. The validity of the tax complained of depends upon whether or not the moneyed capital in the state thus favored is employed in such a manner as to bring it into substantial competition with the business of national banks.

The question thus raised involves considerations both of fact and of law. To answer it, it is necessary to ascertain the nature and extent of the moneyed capital in the hands of individual citizens within the state and the relation of its employment, in point of competition, to the business of plaintiff and other national banks. It is necessary also to ascertain the precise meaning to be given the statute as applied to the facts in hand in order to determine whether the particular moneyed capital and the particular competition with which we are here concerned are moneyed capital and competition within the spirit and purpose of the statute. The question is thus a mixed one of law and fact, and in dealing with it we may review the facts in order correctly to apply the law. *Truax* v. *Corrigan,* 257 U. S. 312, 325; *Kansas City Southern Ry.* v. *Albers Commission Co.,* 223 U. S. 573, 591; *Northern Pac. Ry.* v. *North Dakota,* 236 U. S. 585, 593; *Jones National Bank* v. *Yates,* 240 U. S. 541, 552, 553; cf. *Merchants' National Bank* v. *Richmond, supra,* 638 The opposite view expressed in *Jenkins* v. *Neff,* 186 U. S. 230, 235, must be considered discarded by the later cases. Also, as the case is brought here from a state court for review on the ground that a federal right there set up

was denied, this Court is not concluded by a finding of the state court that the asserted right is without basis in fact. *Aetna Life Ins. Co. v. Dunken,* 266 U. S. 389, 394; *Southern Pac. Co. v. Schuyler,* 227 U. S. 601, 611.

The evidence shows that plaintiff in the course of its business receives deposits, loans money, has a savings department, deals in exchange, buys and sells notes, government and other bonds, discounts commercial paper and acquires real estate mortgages by loan and purchase. On the trial, plaintiff called numerous witnesses who gave testimony, uncontradicted by defendant, tending to show the nature and extent of various classes of moneyed capital in the hands of individuals in the state and the nature of its employment in competition with the business carried on by national banks. There are real estate firms engaged in lending money to individuals in the vicinity of plaintiff's banking house, the amount thus loaned amounting annually from $250,000 to $300,000. According to the testimony, the making of these loans affords the same competition to plaintiff as loans made by banks. And similar conditions obtain throughout the state. There are various individuals, co-partnerships and corporations in the vicinity engaged in the business of acquiring and selling notes, bonds, mortgages and securities. Substantial capital is employed in their business. Others, having their place of business in Milwaukee and in Chicago, are engaged within the state in the business of buying and selling securities both in the vicinity of plaintiff's banking house and elsewhere, and employ capital for that purpose. Securities thus acquired and offered for sale include public utility and other forms of bonds, notes and farm mortgages. In 1921, one company alone, having its place of business in Milwaukee but doing business throughout the state, including the vicinity of plaintiff's bank, sold approximately $25,000,000 of bonds and other securities. This company is shown to be affiliated

with and its stock held principally by stockholders of the First Wisconsin National Bank of Milwaukee, and to have been organized for the purpose of taking over the business of the bank in dealing in securities. Neither the capital employed in these various enterprises by individuals or corporations, so far as invested in the credits, nor the shares held by investors in such corporations is subjected to the *ad valorem* tax.

Upon this evidence, the trial court found that during 1921 moneyed capital in the hands of individual citizens in the vicinity of plaintiff's banking house, amounting to many hundreds of thousands of dollars, which was not assessed for taxation nor taxed, was employed in a manner which brought it into competition with the business conducted by national banks, including that of plaintiff. It also found that moneyed capital to the extent of millions of dollars held by individual citizens throughout the state, and employed in a manner which brought it into competition with such banks, was similarly exempt from this taxation.

The State Supreme Court held that it was not concluded by these findings of mixed law and fact. Since the Wisconsin tax law is one of state-wide application, it took judicial notice of the general conditions within the state to which the law applies, and reached the conclusion that there was no capital in the hands of individual citizens which was invested or used in substantial competition with capital invested in shares of national banks.

In so doing, it pointed out that under § 224.03 (Wis. Stat. 1923) all persons, firms and corporations doing a banking business are required to incorporate as banks and their shares are taxed in the same way and at the same rate as shares in national banks. As the basic ground for its decision, the court stated that in consequence of these statutes, "there are no concerns or individuals

within the state of Wisconsin engaged in enterprises in which the capital employed in carrying on its business, is money, ' where the object of the business is the making of profit by its use as money,' except banks. All such persons, firms and corporations are required under the laws of the state of Wisconsin to organize as banks."

But the Wisconsin statutes requiring those engaged in the banking business to incorporate as banks are expressly limited in their application to those engaged in " soliciting, receiving or accepting of money or its equivalent on deposit as a regular business." Wis. Stat. 1923, § 224.02. They have no application to transactions already described which formed the basis of the trial court's finding that competition existed. It is not denied, and indeed it affirmatively appears from the evidence, that there are individuals, firms and corporations in Wisconsin, not required by its laws to be incorporated as banks, engaged in the business of loaning money on the security of notes, bonds, and mortgages, and buying and selling securities, all involving investment and reinvestment by them and their customers. Through the activities of these business concerns, large investments are made and remade in such securities. Large amounts of capital are thus employed in some of the ordinary banking activities although these individuals and firms do not receive deposits.

The state court did not ignore this evidence. It conceded that the local tax statutes were in fact discriminatory. But it apparently construed the decisions of this Court as requiring equality in taxation only of moneyed capital invested in businesses substantially identical with the business carried on by national banks. Consequently, since that class of business must under the Wisconsin statutes be carried on in corporate form and capital invested in it is taxed at the same rate as national bank shares, other moneyed capital, as defined in § 5219, within

the state, it thought, was not favored.   Under this view, if logically pursued, capital invested in businesses engaged in some but not all of the activities of national banks as well as that employed by individuals in investment and reinvestment in securities such as we have described could not be considered in determining the question of competition.

But this Court has recently had occasion, in reviewing the earlier decisions dealing with this subject, to point out that the requirement of approximate equality in taxation is not limited to investment of moneyed capital in shares of state banks or to competing capital employed in private banking.   The restriction applies as well where the competition exists only with respect to particular features of the business of national banks or where moneyed capital " is employed, substantially as in the loan and investment features of banking, in making investments by way of loan, discount or otherwise, in notes, bonds or other securities, with a view to sale or repayment and reinvestment." *First National Bank* v. *Anderson, supra,* 348.   In so doing, it followed the holding in *Mercantile Bank* v. *New York,* 121 U. S. 138, 157, that,

" The terms of the act of Congress, therefore, include shares of stock or other interests owned by individuals in all enterprises in which the capital employed in carrying on its business is money, where the object of the business is the making of profit by its use as money. The moneyed capital thus employed is invested for that purpose in securities by way of loan, discount, or otherwise, which are from time to time, according to the rules of the business, reduced again to money and reinvested. It includes money in the hands of individuals employed in a similar way, invested in loans, or in securities for the payment of money, either as an investment of a permanent character, or temporarily with a view to sale or repayment and reinvestment.   In this way the moneyed

capital in the hands of individuals is distinguished from what is known generally as personal property, . . ."

The amendment to § 5219 (Act of March 4, 1923, c. 267, 42 Stat. 1499), passed after the present tax was levied, provides that " bonds, notes, or other evidences of indebtedness in the hands of individual citizens not employed or engaged in the banking or investment business and representing merely personal investments *not made in competition* with such business, shall not be deemed moneyed capital within the meaning of this section." (Italics ours.) It is said that this enactment is a legislative interpretation of § 5219 as it stood prior to the amendment; that consequently a narrower interpretation must be given to this section than in earlier cases, and that under the section before and as amended, personal investments of individuals should, under no circumstances, be deemed included in the term competing capital. But as was pointed out in *First National Bank* v. *Anderson, supra,* 350, the amendment did no more than put into express words that " which according to repeated decisions of this Court was implied before." By its terms the amendment excludes from moneyed capital only those personal investments which are not in competition with the business of national banks.

Competition may exist between other moneyed capital and capital invested in national banks, serious in character and therefore well within the purpose of § 5219, even though the competition be with some but not all phases of the business of national banks. Section 5219 is not directed merely at discriminatory taxation which favors a competing banking business. Competition in the sense intended arises not from the character of the business of those who compete but from the manner of the employment of the capital at their command. No decision of this Court appears to have so qualified § 5219 as to permit discrimination in taxation in favor of moneyed capital such

as is here contended for. To so restrict the meaning and application of § 5219 would defeat its purpose. It was intended to prevent the fostering of unequal competition with the business of national banks by the aid of discriminatory taxation in favor of capital invested by institutions or individuals engaged either in similar businesses or in particular operations or investments like those of national banks. *Mercantile Bank* v. *New York, supra,* 155. With the great increase in investments by individuals and the growth of concerns engaged in particular phases of banking shown by the evidence in this case and in *Minnesota* v. *First National Bank of St. Paul,* today decided, *post,* p. 561, discrimination with respect to capital thus used could readily be carried to a point where the business of national banks would be seriously curtailed. Our conclusion is that § 5219 is violated wherever capital, substantial in amount when compared with the capitalization of national banks, is employed either in a business or by private investors in the same sort of transactions as those in which national banks engage and in the same locality in which they do business.

Some of the cases dealing with the technical significance of the term competition in this field were decided before national banks were permitted to invest in mortgages as they now are. Act of December 23, 1913, c. 6, § 24, 38 Stat. 251, 273; Act of September 7, 1916, c. 461, 39 Stat. 752, 754; Act of February 25, 1927, § 24. And others go no further than to hold that in the absence of allegation and proof of competition with national banking capital, it cannot be said that an offending discrimination exists. And it is not sufficient to show that untaxed capital is invested in loans and securities without showing also that the class of investments favored is open to national banks.

Here, large amounts of capital are shown to be invested in businesses carried on throughout the state which are of the same character as some though not all of the business

carried on by national banks. In two fields at least, loans and sales of credits, capital thus employed is shown to be in substantial competition with that of national banks.

The evidence might have been directed more in detail to the precise character of the competition. But that offered was uncontradicted, and when it was shown that national banks in the State of Wisconsin having a capital and surplus in excess of fifty millions of dollars are engaged in the business of making loans, and that there is an extensive loan business in the state not subjected to the tax burdens of national banks, and it was testified directly that this business came into competition with the business of plaintiff and other national banks, we think that the finding of the trial court was supported by the evidence and should not have been disturbed.

There was also, we think, sufficient evidence that private individuals as investors of surplus funds are engaged in loaning money at interest on real estate mortgages and other evidences of indebtedness such as normally enter into the business of banking and that these investments are of substantial amount. We do not conceive that in order to establish the fact of competition it is necessary to show that national banks and competing investors solicit the same customers for the same loans or investments. It is enough as stated if both engage in seeking and securing in the same locality capital investments of the class now under consideration which are substantial in amount.

It is argued that national banks are not authorized to deal in bonds or other evidences of indebtedness and that § 5219 was not intended to protect them from discriminatory taxation in favor of moneyed capital employed in a business in which they may not engage. But it is not necessary for the purposes of this case to determine the precise limits of their powers. They are given authority, in addition to loaning money, to exercise all such " incidental powers " as shall be necessary to carry on the busi-

ness of banking " by discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of debt." § 5136 Revised Statutes. They are authorized, with certain limitations, to loan money on real estate mortgages. Act of December 23, 1913, *supra;* Act of September 7, 1916, *supra;* Act of February 25, 1927, § 24. Here plaintiff is shown to have investments in real estate mortgages and to be engaged in selling them. The sale of mortgages and " other evidences of debt " acquired by way of loan or discount with a view to reinvestment is, we think, within the recognized limits of the incidental powers of national banks. Compare *First National Bank* v. *Anderson, supra,* 348; *Mercantile National Bank* v. *New York, supra,* 156. To that extent the business of acquiring and selling such mortgages and evidences of debt, carried on by numerous individuals, firms, and corporations in Wisconsin, comes into competition with this incidental business of national banks. That the exercise of this incidental power has become of great importance in the business of national banks appears from the Report of the Comptroller of the Currency for 1924, 44 *et seq.,* showing that approximately one-third of the investment of national banks consist of Government, railroad, public service corporation and other bonds, and " collateral trust and other corporation notes."

Finally it is said that § 5219 is directed to an unfriendly discrimination or hostile attitude on the part of a state and that here the Wisconsin legislation was not dictated by such considerations, since the challenged exemptions were merely incidental to the adoption of a state policy of substituting, so far as possible, an income for a personal property tax. But a consideration of the entire course of judicial decision on this subject can leave no doubt that state legislation and taxing measures which by their necessary operation and effect discriminate against capital invested in national bank shares in the manner described are

intended to be forbidden. The questions here considered arising from the application of an *ad valorem* tax are not affected by the amendment of § 5219 by the Act of March 4, 1923, c. 267, 42 Stat. 1499, which permits in lieu of the *ad valorem* tax on shares of national banks either a non-discriminatory tax on the income of national banks or on the income derived from their shares.

*Judgment reversed.*