## STEWARD v. ATLANTIC NAT. BANK OF BOSTON.

Circuit Court of Appeals, Ninth Circuit. July 2, 1928.

### No. 5332.

1. **Banks and banking** ☞281—**National bank, in course of voluntary liquidation, retained status as "citizen of state," with power to sue (Jud. Code, § 24 [16]; 28 USCA § 41 [16]).**

National bank assigning notes, which at time of suit thereon was in course of voluntary liquidation, retained status as resident and citizen of state with power to sue and be sued, within meaning of Judicial Code, § 24 (16), 28 USCA § 41 (16).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Citizen.]

2. **Bills and notes** ☞517—**Place where notes are dated is only prima facie evidence that notes were executed there, and such evidence may be overcome by parol proof.**

Place at which notes are dated, while affording prima facie evidence that notes were executed there, is not conclusive, and such evidence may be overcome by parol proof that notes were actually executed elsewhere.

3. **Limitation of actions** ☞2(1)—**Notes executed and delivered to Arizona agent of Massachusetts bank, accepting bale receipts for cotton given as collateral, and giving immediate cash or credit through drafts paid in Massachusetts, were executed in Arizona as regards limitation (Laws Ariz. 1917, c. 76, § 2, amending Civ. Code 1913, par. 714; Civ. Code 1913, par. 713 [3]).**

Where Massachusetts bank, through its agent in Arizona, offered to loan money on cotton, and maker of note indorsed and delivered bale receipts and executed notes in Arizona, drawing drafts on Massachusetts bank, which notes and drafts were approved by the agent, maker receiving immediate cash or credit, notes were executed in Arizona, and not in Massachusetts, though drafts were paid in Boston and the notes were dated there, and therefore Laws Ariz. 1917, c. 76, § 2, amending Civ. Code 1913, par. 714, providing six-year limitation period for contracts in writing executed within Arizona, was applicable, and not paragraph 713 (3), Civ. Code 1913, limiting suits on foreign contracts to four years.

**4. Bills and notes ⊗⇒127—Place of payment named in note, or place where money is advanced, does not necessarily determine place of note's execution.**

Naming of place of payment of note does not determine place of execution, and advance of money to the maker is not an essential part of the execution of the obligation, in determining where execution took place.

**5. Limitation of actions ⊗⇒2(1)—Where notes covering freight on cotton pledged were signed and delivered to Massachusetts bank's Arizona agent, under agreement that payee should fill in amount of freight, notes were executed in Arizona as regards limitation (Laws Ariz. 1917, c. 76, § 2, amending Civ. Code 1913, par. 714; Civ. Code 1913, par. 713 [3]).**

Where notes given Massachusetts bank for payment of freight of cotton pledged as collateral security were executed in blank, under agreement that the payee should fill in the amount of freight which was to be advanced by the bank in Massachusetts, notes must be treated as executed at time they were signed and delivered to agents in Arizona, and were executed there as regards determination of applicable statute of limitations, under Laws Ariz. 1917 c. 76, § 2 amending Civ. Code 1913, par. 714, Civ. Code 1913, par. 713(3).

**6. Banks and banking ⊗⇒269—National bank may lend money on collateral security in another state (12 USCA §§ 372, 373).**

National bank located in one state may lend money on collateral security in another state without violation of federal banking laws (12 USCA §§ 372, 373).

**7. Banks and banking ⊗⇒260(1)—National bank held authorized to purchase commercial paper and sue thereon as assignee (12 USCA § 24).**

National bank may purchase commercial paper, and sue on paper so purchased, under Rev. St. § 5136 (12 USCA § 24), giving national banks authority to loan money and exercise incidental power necessary to carry on business of banking, by discounting and negotiating bills and notes.

**8. Banks and banking ⊗⇒233—National bank organized in another state held not "foreign corporation," within requirements that foreign corporation secure permit to do business; "foreign country" (Const. Ariz. art. 14, §§ 5, 17; Civ. Code 1913, Ariz. pars. 2226–2228, 2230).**

National bank organized in state of Massachusetts *held* not "foreign corporation," required to secure permit to do business in state of Arizona as condition precedent to maintaining suit there under Const. Ariz. art. 14, §§ 5, 17, Civ. Code 1913, Ariz. pars. 2226–2228, 2230, relating to companies incorporated under the laws of any other state, territory, or any foreign country, bank not being foreign corporation and "foreign country" meaning country exclusively within sovereignty of foreign nation, and without the sovereignty of the United States.

**9. Constitutional law ⊗⇒48—In absence of unmistakably clear language of statute, state's assumption of regulatory power over national agencies will not be found.**

In absence of unmistakably clear language in statute, it will not be found that state has attempted to exercise regulatory power over national agencies established in aid of governmental purposes.

In Error to the District Court of the United States for the District of Arizona; F. C. Jacobs, Judge.

Action by the Atlantic National Bank of Boston against L. L. Steward. Judgment for plaintiff, and defendant brings error. Affirmed.

Writ of error to review a judgment in favor of defendant in error bank, for balances due on twenty promissory notes dated at Boston, Mass., payable on demand with interest to the order of People's National Bank of Roxbury (Boston), called the People's Bank, executed between October, 1920, and January, 1921, by plaintiff in error, a citizen and resident of Arizona. Defendant made general denial of each allegation of the complaint, pleaded the Arizona statute of limitations, and that the Boston banks concerned were foreign corporations, and had not complied with the laws of Arizona, which would authorize them to do business in that state. The case was tried to the court, which made special findings as follows: That prior to October 7, 1920, the Atlantic National Bank of Boston and the People's National Bank of Roxbury were national banking institutions at Boston, Mass.; that on October 16, 1920, at Phœnix, Ariz., defendant Steward, then and at all times thereafter a citizen and resident of Arizona, for consideration made, executed, and delivered to the People's National Bank the notes described in the complaint, and also delivered at Phœnix to the People's Bank certain collateral, bales of cotton, described in each of the notes; that on August 31, 1922, the Atlantic National Bank of Boston, defendant in error here, then under the name of Fourth Atlantic National Bank of Boston, bought from the People's Bank the good will and assets of that bank, including the promissory notes just referred to; that the notes were thereupon transferred and delivered by the People's Bank to the Atlantic National Bank, and that the Atlantic National Bank assumed the liabilities of the People's Bank; that thereupon the People's Bank went into liquidation and afterwards, about June 25, 1923, the Atlantic National Bank, under the corporate name of Fourth Atlantic National

Bank of Boston, consolidated with the Commonwealth Atlantic National Bank of Boston; that the Atlantic National Bank changed its name to Commonwealth Atlantic National Bank of Boston, and thereafter in August, 1924, the Commonwealth Atlantic National Bank changed its corporate name to Atlantic National Bank of Boston, which was and is the owner and holder of the notes above mentioned; that in March 1924, Steward in a writing signed by him acknowledged the justness of the claim of the Atlantic National Bank with respect to the promissory notes; that the cotton pledged as collateral security for the payment of the notes referred to was sold under the terms of the promissory notes and the proceeds thereof were duly credited, but that there is due and owing by Steward to the bank certain specified sums.

Each of the several notes set forth that the maker had deposited with the bank, as general collateral security for the payment of the liability, certain described bales of cotton with power in the bank on the nonpayment of the note when due or thereafter, to sell, assign, and deliver the property at public or private sale without notice, with the right in the holder of the note to become the purchaser at any such sale.

Earl Anderson, Thomas W. Nealon, and Thomas A. Flynn, all of Phœnix, Ariz., for plaintiff in error.

Harold Baxter and W. W. Carpenter, Jr., both of Phœnix, Ariz., for defendant in error.

Before RUDKIN, DIETRICH, and HUNT, Circuit Judges.

HUNT, Circuit Judge (after stating the facts as above). [1] Plaintiff in error presents a question of jurisdiction by contending that inasmuch as the People's Bank, assignor of the defendant in error, went into voluntary liquidation before this suit was instituted, it was no longer a banking institution located at the place designated in its charter and was not a citizen of Massachusetts within the meaning of Judicial Code, section 24, subd. 16 (28 USCA § 41 [16]), and therefore that at the time of the institution of this suit there was no diversity of citizenship between plaintiff in error and the assignor of the defendant in error. But as the record contains a stipulation that the People's Bank, assignor of the defendant in error, was at the time of the trial in the course of voluntary liquidation, we are satisfied it retained its corporate status, capable of suing and being sued, with power to proceed by judicial process to collect its assets. The law was so declared in Bank of Bethel v. Pahquioque, 14 Wall. 383, 20 L. Ed. 840, when the Supreme Court decided that the act of Congress (13 Stat. 99), creating a national bank authorized the association to sue and be sued, complain and defend, in all cases where it might be necessary that the corporate name of the association should be used for that purpose "in closing its business and winding up its affairs under the provisions of the act which authorized its formation." That decision was followed in Central National Bank v. Connecticut Mut. Life Insurance Co., 104 U. S. 54, 26 L. Ed. 693, holding that a national bank in voluntary liquidation is not thereby dissolved as a corporation, but may sue and be sued by name for the purpose of winding up its business, and that it was the intention of the law that such an association should continue to exist as a person in law, capable of suing and being sued until the affairs and business of the association are completely settled. It must, therefore, follow that, as there never was a dissolution of the association, it necessarily, during the process of winding up its affairs, retained its status as a resident and citizen of Massachusetts, with power to sue as a plaintiff or to be sued as a defendant.

[2, 3] In argument that the Arizona statute of limitations bars this suit, counsel say that the notes sued upon were executed in Massachusetts, where they were delivered, and that all were due more than four years before this action was commenced. There were two classes of notes, the one evidencing loans or advances made on the cotton pledged; the other covering freight on cotton consigned. Each of the notes of the latter class contained a statement that it was secured by collateral previously pledged. Plaintiff in error cites the Civil Code of Arizona, subdivision 3 of paragraph 713, which provides that there shall be commenced and prosecuted within four years after the cause of action shall have accrued and not afterwards, all actions or suits upon a judgment or decree of any court rendered without Arizona, or upon an instrument in writing executed without Arizona.

We are of opinion, however, that the applicable provision is section 714, Laws of Arizona 1917 (c. 76, § 2), which provides that an action for debt where the indebtedness is evidenced by or founded upon any contract in writing executed within Arizona, shall be commenced and prosecuted within

six years after the cause of action shall have accrued and not afterward. While we keep in mind that the notes sued upon are dated at Boston and that prima facie the notes were executed there, still such evidence may be overcome by parol proof that the notes were actually executed in Arizona. Elliott on Contracts, vol. II, par. 1117. The evidence upon the matter is that the People's Bank, through its agent in Arizona, offered to loan certain amounts on cotton, which offer Steward accepted; that in compliance with the offer of the bank Steward indorsed and delivered to the bank's agent at Phœnix the bale receipts and signed and delivered to such agent his notes, which the bank had authorized and directed its agent to accept. Steward then drew drafts upon the People's Bank in favor of a local bank in Phœnix, or in some instances, received drafts drawn in favor of himself by the bank's agent in Phœnix. Those notes and drafts were approved by the bank's agent at Phœnix, and thereafter trust receipts and notes were intrusted to Steward to be used in accordance with the instructions given to him and the agreement that had been entered into. The trust receipts were dated at Phœnix and recited that Calder & Richmond, for account of People's Bank at Boston had received cotton described belonging to Steward, which the Arizona bank agreed to hold until a full carload was obtained, when it was to be shipped to the People's Bank at Boston under order and bills of lading in the name of the Boston bank.

The contract thus became a binding one as between Steward and the People's Bank. Steward's acts, done after notes, drafts, and trust receipts were handed to him by the Arizona representative of Calder & Richmond, cotton brokers of Boston, in carrying out the plan which had theretofore been agreed upon, were performed as a bailee of the Boston bank's agent in Arizona. That it was the intention to enter into a binding contract in Arizona is made more apparent by the fact that the People's Bank had advised the bank in Arizona that, after the papers had been approved by its agent in Arizona, the amount of the drafts could be safely paid. Upon this point the testimony of the vice president of the People's Bank, who was also vice president of the Atlantic National Bank, was that the People's Bank instructed Smith, Arizona agent of Calder & Richmond, cotton brokers, to tell the bank in Arizona "that upon the drafts being accompanied by the papers mentioned, and I think his O. K. on the back of the draft, they could con- sider the transaction completed and honor the drafts. The notes were made payable in printed form, all the same way." It is also in evidence that Smith was instructed by the People's Bank to tell the grower "that upon completion of all the papers he could take them to his local bank and obtain the money for the draft." It was further proved that the bank took immediate possession of the cotton pledged, and thereafter shipped it to Boston and that Steward, when he went to the local bank, accepted cash or immediate credit and distributed the same among his associated cotton growers.

[4] The facts convince us that a delivery took effect at once upon the acceptance of the money by Steward. Lachenmaier v. Hanson (C. C. A.) 196 F. 773; Purviance v. Jones, 120 Ind. 162, 21 N. E. 1099, 16 Am. St. Rep. 319; Wilson v. Wilson, 158 Ill. 567, 41 N. E. 1007, 49 Am. St. Rep. 176. Nothing of moment against such a conclusion is fairly deducible from the fact that the drafts were paid by the People's Bank in Boston. The naming of a place of payment of a note does not determine the place of execution thereof. The money for which the note is given may have been advanced before, or at the time of, or after the execution of the note, according to the agreement of the parties. Of course, there must have been consideration for the notes under examination, but the advance of the money was not an essential part of the execution of the obligation. Marling v. Fitzgerald, 138 Wis. 93, 120 N. W. 388, 23 L. R. A. (N. S.) 177, 131 Am. St. Rep. 1003.

[5] The freight notes were executed in blank, but the evidence is that they were made for the payment of the freight on the cotton, and that all that was left to be done was for the payee to fill in the amount of the freight, which was to be advanced by the bank when ascertained. That was the agreement, and, as all such notes were filled in accordance with that understanding, the notes must be treated as executed at the time they were signed and delivered to the agents of the bank in Arizona. Tremont Trust Co. v. Noyes, 246 Mass. 197, 141 N. E. 93; Chelsea Exchange Bank v. Warner, 202 App. Div. 499, 195 N. Y. S. 419; Exchange Bank v. Robinson, 185 Mo. App. 582, 172 S. W. 628.

[6] Plaintiff in error says that a national bank can only transact business in the particular place named in its charter, and that, if the defendant in error's assignor was making loans and took notes in the state of Arizona, it was doing business contrary to the federal banking laws. It is so clear

that a national bank in one state may lend money on collateral security in another state that we do not stop to discuss the point. USCA, tit. 12, §§ 372, 373.

[7] Another contention of the plaintiff in error is that the Atlantic National Bank of Boston is not the owner and holder of the notes sued upon, for the reason that it bought the notes from the People's Bank of Roxbury, and that a national bank may not purchase commercial paper, and may not enforce suit upon commercial paper which has been bought by it. Such restriction would interfere with the purposes of their creation. It is much too narrow. Not only may such banks make loans or advances thereon, but it is held they may buy commercial paper at less than its face value. Rev. St. § 5136 (12 USCA § 24); National Bank v. Johnson, 104 U. S. 271, 26 L. Ed. 742; 7 C. J. 818; 3 R. C. L. 422; Morris v. Springfield Third National Bank (C. C. A.) 142 F. 25; Atlas National Bank v. Savery, 127 Mass. 75; Merchants' National Bank v. Hanson, 33 Minn. 40, 21 N. W. 849, 53 Am. Rep. 5, citing Union National Bank v. Matthews, 98 U. S. 621, 25 L. Ed. 188, and National Bank v. Whitney, 103 U. S. 99, 26 L. Ed. 443, and overruling earlier decisions by the Supreme Court of Minnesota. In First National Bank v. Hartford, 273 U. S. 548, 47 S. Ct. 462, 71 L. Ed. 767, the court said that national banks are given authority "in addition to loaning money, to exercise all such incidental powers" as shall be necessary to carry on the business of banking by discounting and negotiating promissory notes, drafts, bills of exchange and other evidences of debt. R. S. § 5136.

We are asked to decide that the bank is a foreign corporation and, not having a permit to do business in Arizona, as provided by the Constitution and laws of the state, it cannot maintain this action. To support that proposition reliance is put upon certain Arizona constitutional and statutory provisions. Section 5 of article 14 of the Constitution provides that no corporation organized outside of Arizona shall be allowed to transact business within Arizona on more favorable terms than are prescribed by law for Arizona corporations. Section 17 provides that no foreign corporation shall have authority to do business in Arizona until it shall have obtained state authority and a license to do business in the state. By Civ. Code Ariz. § 2226, "any company incorporated under the laws of any other state, territory, or any foreign country," which shall carry on, do or transact any business in Arizona shall, before doing any such business, file certain papers and an appointment of an agent and pay a license fee. Paragraph 2227 pertains to "any such foreign corporation" as proposes to carry on business in Arizona. Paragraph 2228 provides that no corporation such as is mentioned in paragraph 2226 shall transact any business in Arizona until and unless it shall have first filed its articles of incorporation and have appointed an agent and paid a license fee, and have received from the state corporation commissioner a license authorizing the company to do business in the state, and "every act done by said corporation prior to said filing, payment of fees, and the procurement of said license, shall be utterly void." Upon complying with the provisions cited, a corporation organized under the laws of "any other state or territory, or any foreign country," shall be competent to possess, own, hold, and dispose of property within Arizona, and to prosecute and defend, and to appear specially and generally in any action in any court of or within Arizona. Civ. Code Ariz. par. 2230.

[8, 9] However important may be the general question, to what extent a state may have authority to impose regulations upon the right of a national bank seeking to carry on or transact business in a state other than that named in its charter, that question is not here involved, for the reason that a national bank is not a foreign corporation within the terms of the constitutional and statutory provisions of Arizona referred to; nor is it an association incorporated under the laws of any other state or territory. We find nothing in the phraseology of the statute (paragraph 2226, supra) which indicates an intention to classify national banks created by national law as foreign corporations. The words "foreign country," when given their usual and simple significance, mean a country exclusively within the sovereignty of a foreign nation and without the sovereignty of the United States (De Lima v. Bidwell, 182 U. S. 1, 21 S. Ct. 743, 45 L. Ed. 1041), and in the absence of unmistakably clear language, it will not be found that the state has attempted to exercise a regulatory power over national agencies established in aid of governmental purposes.

The views expressed dispose of the principal points and require an affirmance of the judgment.

Affirmed.