### MARICOPA COUNTY et al. v. VALLEY NAT. BANK OF PHŒNIX.

### No. 10025.

Circuit Court of Appeals, Ninth Circuit.

Aug. 7, 1942.

Writ of Certiorari Granted Nov. 16, 1942.

See — U.S. —, 63 S.Ct. 201, 87 L.Ed. —.

Richard F. Harless, Co. Atty., and Leslie C. Hardy, Deputy Co. Atty., both of Phoenix, Ariz., for appellant Maricopa County et al.

J. M. Johnson, Co. Atty., and Conner & Jones, all of Tucson, Ariz., for appellant Pima County et al.

J. L. Gust, Charles L. Rawlins, Gust, Rosenfeld, Divelbess, Robinette & Coolidge, and Rawlins & Rawlins, all of Phoenix, Ariz., (William C. Fitts, of Washington, D. C., of counsel), for appellee.

Before GARRECHT, MATHEWS, and HANEY, Circuit Judges.

MATHEWS, Circuit Judge.

In two suits (Nos. 333 and 350) brought by appellee, a national banking association, against Maricopa County, Arizona, Pima County, Arizona, and the county treasurer, the county assessor and the members of the board of supervisors of each of said counties,[1] appellee obtained judgments enjoining appellants from collecting State, county, municipal and school district taxes on shares of preferred stock of appellee owned by Reconstruction Finance Corporation. Appellants seek reversal.

Suit No. 333, commenced on October 23, 1935, involved taxes for 1935 aggregating $43,598.45,[2] of which Maricopa County and its officers sought to collect $31,872.77 and Pima County and its officers sought to collect $11,725.68. Suit No. 350, commenced on October 31, 1936, involved taxes for 1936 aggregating $45,075.40,[3] of which

---

[1] Other counties and county officers were joined as defendants, but have not appealed. For present purposes, therefore, Maricopa County and its officers and Pima County and its officers may be regarded as the only defendants in these suits.

[2] Exclusive of taxes sought to be collected in counties other than Maricopa and Pima.

[3] Exclusive of taxes sought to be collected in counties other than Maricopa and Pima.

Maricopa County and its officers sought to collect $29,927.88 and Pima County and its officers sought to collect $15,147.52. All the taxes involved were on the same shares—198,400 shares of preferred stock issued by appellee on February 11, 1935, pursuant to § 301 of the Act of March 9, 1933, c. 1, 48 Stat. 5, as amended by the Act of June 15, 1933, c. 79, 48 Stat. 147, 12 U.S.C.A. § 51a, and acquired by Reconstruction Finance Corporation on February 11, 1935, pursuant to § 304 of said Act of March 9, 1933, as amended by § 2 of the Act of March 24, 1933, c. 8, 48 Stat. 20, 12 U.S.C.A. § 51d.

Until March 9, 1933, national banking associations were not empowered to issue preferred shares. They were, however, empowered to issue shares of common stock, and Congress, by § 5219 of the Revised Statutes, 12 U.S.C.A. § 548, had consented to the imposition of State taxes thereon, subject to the conditions prescribed in § 5219. Whether such consent should be construed to embrace preferred shares issued pursuant to § 301, supra, and acquired by Reconstruction Finance Corporation pursuant to § 304, supra, was a debatable—and much debated—question until February 3, 1936, when the Supreme Court, in Baltimore National Bank v. State Tax Commission, 297 U.S. 209, 56 S.Ct. 417, 80 L.Ed. 586, decided that it should be so construed. Thereupon Congress, by § 1 of the Act of March 20, 1936, c. 160, 49 Stat. 1185, amended § 304 by adding thereto the following provision:

"Notwithstanding any other provision of law or any privilege or consent to tax expressly or impliedly granted thereby, the shares of preferred stock of national banking associations * * * acquired before or after March 20, 1936 by Reconstruction Finance Corporation * * * shall not, so long as Reconstruction Finance Corporation shall continue to own the same, be subject to any taxation * * * by any State, county, municipality, or local taxing authority, whether imposed, levied, or assessed on, before or after March 20, 1936, and whether for a past, present, or future taxing period."

Applying this provision, the court below held that the shares here involved were not subject to taxation, and that, therefore, the taxes here involved were illegal and void. Appellants contend that the provision was inapplicable for the following reasons:

The taxes involved in suit No. 333 were levied and assessed before the date (March 20, 1936) on which the above quoted provision was enacted and were for a taxing period (the calendar year 1935) which commenced and ended before March 20, 1936. The taxes involved in suit No. 350 were for a taxing period (the calendar year 1936) which commenced before March 20, 1936. All the taxes involved were levied under the authority of chapter 75 (§§ 3056-3192) of the Revised Code of Arizona 1928, of which § 3101, as amended by § 1 of chapter 106, Session Laws of Arizona 1931, provided:

"Every tax levied under the authority of this chapter upon real or personal property shall be a lien upon the property assessed. The lien shall attach on the first Monday in January in each year, and shall not be satisfied or removed until such taxes, penalties, charges and interest are all paid, or the property has finally vested in a purchaser under a sale for taxes. * * *"

■ Therefore appellants say that the 1935 taxes here involved became a lien upon the assessed property (appellee's preferred stock) on the first Monday in January, 1935, and that the 1936 taxes here involved became a lien upon the assessed property on the first Monday in January, 1936. Thus, appellants say, the lien of all the taxes had attached before the enactment of the above quoted provision of § 304.[4] That fact—assuming it to be a fact—did not, however, render the provision inapplicable; for, by its terms, the provision applies to all taxation of preferred stock of national banking associations owned by Reconstruction Finance Corporation, "whether imposed, levied, or assessed on, before or after March 20, 1936, and whether for a past, present, or future taxing period."

■ Appellants contend that, in so far as it applies to the taxes here involved, the provision is unconstitutional in that, by destroying the lien of and right to collect these taxes, it deprives the State of Arizona and its political subdivisions of their property without due process of law, in violation of the Fifth Amendment. Appellants further contend that the lien of

---

4 This provision, which § 1 of the Act of March 20, 1936, added to § 304 of the Act of March 9, 1933, is spoken of in the briefs as the Act of March 20, 1936.

and right to collect these taxes were acquired through the exercise of the State's reserved powers. Therefore they contend that, in destroying said lien and right, the provision violates the Tenth Amendment. These contentions are rejected for the following reasons:

Among the powers which the Constitution delegates to the United States is the power to create Federal instrumentalities such as national banking associations and to exempt such instrumentalities, their shares and shareholders from taxation. McCulloch v. State of Maryland, 4 Wheat. 316, 400–437, 4 L.Ed. 579; Osborn v. Bank of United States, 9 Wheat. 738, 859–871, 6 L.Ed. 204; Van Allen v. Assessors, 3 Wall. 573, 581–588, 18 L.Ed. 229; Bradley v. People of Illinois, 4 Wall. 459, 18 L.Ed. 433; People of New York v. Weaver, 100 U.S. 539, 543, 25 L.Ed. 705; Owensboro National Bank v. City of Owensboro, 173 U.S. 664, 667–669, 19 S.Ct. 537, 43 L.Ed. 850; Bank of California v. Richardson, 248 U.S. 476, 482–484, 39 S.Ct. 165, 63 L.Ed. 372; Smith v. Kansas City Title Co., 255 U.S. 180, 208–213, 41 S.Ct. 243, 65 L.Ed. 577; First National Bank v. Adams, 258 U.S. 362, 364, 42 S.Ct. 323, 66 L.Ed. 661; Federal Land Bank v. Crosland, 261 U.S. 374, 377, 43 S.Ct. 385, 67 L.Ed. 703, 29 A.L.R. 1; Des Moines National Bank v. Fairweather, 263 U.S. 103, 106, 44 S.Ct. 23, 68 L.Ed. 191; First National Bank v. Anderson, 269 U.S. 341, 347, 46 S.Ct. 135, 70 L.Ed. 295; First National Bank v. Hartford, 273 U.S. 548, 47 S.Ct. 462, 71 L.Ed. 767, 59 A.L.R. 1; Pittman v. Home Owners' Loan Corp., 308 U.S. 21, 32, 60 S.Ct. 15, 84 L.Ed. 11, 124 A.L.R. 1263; Federal Land Bank v. Bismarck Lumber Co., 314 U.S. 95, 102, 62 S.Ct. 1, 86 L.Ed. 65.

No power to tax shares of stock of national banking associations is reserved to the States by the Constitution. Their power to tax such shares exists only by consent of Congress. Van Allen v. Assessors, supra; Bradley v. People of Illinois, supra; People of New York v. Weaver, supra; Owensboro National Bank v. City of Owensboro, supra; Bank of California v. Richardson, supra; First National Bank v. Adams, supra; Des Moines National Bank v. Fairweather, supra; First National Bank v. Anderson, supra; First National Bank v. Hartford, supra. Without such consent, no such tax can be imposed, levied, assessed or collected by or under the authority of any State.

By such consent, a privilege is conferred —the privilege of taxing shares of stock of national banking associations. For this privilege nothing is given by the States or received by the United States. It is a mere bounty, a pure gratuity, and hence can be withdrawn by Congress at any time. Reconstruction Finance Corporation v. Elder, D.C.N.D.Ga., 26 F.Supp. 772. In so far as it relates to preferred shares owned by Reconstruction Finance Corporation, the privilege was withdrawn by the enactment of the above quoted provision of § 304 on March 20, 1936. Thereby the collection of taxes on such shares, "whether imposed, levied, or assessed on, before or after March 20, 1936, and whether for a past, present, or future taxing period," is prohibited.

The prohibition is valid as to all such taxes, including those levied and assessed before March 20, 1936, for a period which ended before March 20, 1936, those levied and assessed after March 20, 1936, for a period which commenced before March 20, 1936, and those which, by State law, became a lien before March 20, 1936; for, regardless of when or for what period they were levied or assessed or when, if at all, they became a lien, there is and can be no vested right to collect such taxes. Reconstruction Finance Corporation v. Elder, supra.

Judgments affirmed.