Williams, J.,
 

 dissenting. This cause’ involves the question whether the real property, known as Laurel Homes, which is owned by the Federal Public Housing Authority, formerly the United States Housing Authority, and leased by it to the Cincinnati Metropolitan Housing Authority, is exempt from state taxation. The question, relating as it does to the taxation of property owned by an agency or instrumentality of the federal government, is entirely different from that presented in
 
 Columbus Metropolitan Housing Authority
 
 v.
 
 Thatcher, Aud.,
 
 140 Ohio St., 38, 42 N. E. (2d), 437, and
 
 Dayton Metropolitan Housing Authority
 
 v.
 
 Evatt, Tax Commr., ante,
 
 10, in which the property of the projects was owned by agencie's'orgahis’ed 'under fhestafb enabling act, • ‘ ::
 

 
 *260
 
 The government of the United States is a political entity with limited authority. The only powers possessed by it are those expressly conferred by the federal Constitution plus such implied powers as are necessary to carry the express powers into execution. All other powers are in unequivocal terms reserved to the states. Within its proper sphere of activity, however, the federal government is supreme.
 

 In keeping with the doctrine of federal supremacy it is well established in constitutional law that no state can tax the lawfully owned property of the United States without its consent.
 
 Van Brocklin
 
 v.
 
 State of Tennessee,
 
 117 U. S., 151, 29 L. Ed., 845, 6 S. Ct., 670. The principle on which this pronouncement is based was early applied to corporate agencies, the shares of stock of which were privately owned. It was settled more than a century ago that Congress may incorporate a bank to carry out power granted by the federal Constitution; and that the state governments have no authority to tax any of the means employed by the federal government in the exercise of its constitutional powers.
 
 McCullough
 
 v.
 
 State of Maryland,
 
 17 U. S. (4 Wheat.), 316, 4 L. Ed., 579.
 

 With the creation of the national banking system the same principle of immunity from state taxation was applied to national banks and to their property and shares of stock. “National banks are not merely private moneyed institutions, but agencies of the United States created under its laws to promote its fiscal policies; and hence the banks, their property and their shares cannot be taxed under state authority except as Congress consents and then only in conformity with the restrictions attached to its consent.”
 
 First National Bank of Guthrie Center
 
 v.
 
 Anderson, Aud.,
 
 269 U. S., 341, 347, 70 L. Ed., 295, 46 S. Ct., 135. See, also,
 
 Des Moines National Bank
 
 v.
 
 Fairweather, Mayor,
 
 263 U. S., 103, 106, 68 L. Ed., 191, 44 S. Ct., 23;
 
 First Na
 
 
 *261
 

 tional Bank of Hartford
 
 v.
 
 City of Hartford,
 
 273 U. S., 548, 71 L. Ed., 767, 47 S. Ct., 462, 59 A. L. R., 1, and annotation. If a privately owned bank, created as an agency of tbe United States, enjoys this tax immunity under the federal Constitution,
 
 a fortiori
 
 a lawful corporate agency governmentally owned and controlled should have the same immunity. Moreover, this statement is warranted by the pronouncement in
 
 Graves et al., Commrs.,
 
 v.
 
 State of New York, ex rel. O’Keefe,
 
 306 U. S., 466, 83 L. Ed., 927, 59 S. Ct., 595, 120 A. L. R., 1466. We quote from the latter case at page 477: “When the national government lawfully acts through a corporation which it owns and controls, those activities are governmental functions entitled to whatever tax immunity attaches to those functions when carried on by the government itself through its departments.” See, also,
 
 Pittman
 
 v.
 
 Home Owners’ Loan Corp.,
 
 308 U. S., 21, 84 L. Ed., 11, 60 S. Ct., 15, 124 A. L. R., 1263;
 
 Meredith
 
 v.
 
 Tax Commission,
 
 163 Ore., 305, 96 P. (2d), 1082, 125 A. L. R., 1417;
 
 Clallam County
 
 v.
 
 United States,
 
 263 U. S., 341, 345, 68 L. Ed., 328, 44 S. Ct., 121. We shall inquire, then, into the nature of the corporate instrumentality, with which we are dealing, and the objective sought to be accomplished by the exercise of its corporate power.
 

 The Federal Public Housing Authority is a governmental corporation wholly owned and controlled by the federal government. It is administered by a Federal Public Housing Commissioner, a public officer, and is an agency and instrumentality of the United States, empowered to acquire and own real estate in the establishment of low-rent housing and slum-clearance projects. The purpose is to furnish to substandard families good housing facilities which they cannot afford, and thus promote public health and morals. This course is equivalent to furnishing partial relief to the needy.
 

 
 *262
 
 In pursuance of the power conferred by federal law, the Laurel Homes housing project was established. That the Federal Public Housing Authority, the owner of the property involved in that project, is a lawful instrumentality of the federal government cannot, under the holding of this court, be questioned.
 
 State, ex rel. Ellis, City Solicitor,
 
 v.
 
 Sherrill, City Manager,
 
 136 Ohio St., 328, 25 N. E. (2d), 844. That case involved a contract in which,
 
 inter alia,
 
 there was a provision for the expenditure of a sum of money which “would be employed to add a specified number of dwelling-units to the existing Laurel Homes project [the project we are concerned with herein] for occupation by negro families, and to be considered as a part of the negro slum-clearance plan.” The lawfulness of such governmental agency is, then, established by a decision of this court which has never been overruled. Moreover, the pronouncements therein are sustained by principle and precedent.
 

 In the annotation to the case of
 
 Housing Authority of City of Dallas
 
 v.
 
 Higginbotham
 
 (135 Tex., 158, 143 S. W. [2d], 79), 130 A. L. R., 1053, at page 1075, the following appears:
 

 ‘ ‘ Since the passing of the United States Housing Act of 1937, and the subsequent enactment in many states of slum-clearance enabling acts, an entire series of decisions has been handed down by the courts, in the various jurisdictions, upholding the constitutionality of such slum-clearance and low-cost housing legislation. The list of jurisdictions, and recent cases, wherein the constitutionality of slum-clearance and low-cost housing statutes and ordinances has been upheld is as follows: * * *.” Then appears a list of 23 states, including Ohio, with citation of authorities. Like holdings have been made in four other jurisdictions:
 
 Hogue
 
 
 *263
 
 v.
 
 Housing Authority of North Little Rock,
 
 201 Ark., 263, 144 S. W. (2d), 49;
 
 People, ex rel. Stokes,
 
 v.
 
 Newton,
 
 106 Colo., 61, 101 P. (2d), 21;
 
 Keyes
 
 v.
 
 United States
 
 (Dist. of Col.), 119 F. (2d), 444;
 
 Mumpower
 
 v.
 
 Housing Authority of City of Bristol,
 
 176 Va., 426, 11 S. E. (2d), 732.
 

 It is settled law tliat the government of the United States has power to expend money in promotion of the general welfare. In upholding the validity of “Federal Old-Age Benefits” set up by Title II of the Social Security Act, the Supreme Court of the United States, speaking through Mr. Justice Cardozo, in
 
 Helvering, Commr.,
 
 v.
 
 Davis,
 
 301 U. S., 619, 640, 81 L. Ed., 1307, 57 S. Ct., 904, 109 A. L. R., 1319, said:
 

 “Congress may spend money in aid of the ‘general welfare.’ Constitution, Art. I, Section 8;
 
 United States
 
 v.
 
 Butter,
 
 297 U. S., 1, 65;
 
 Steward Machine Co.
 
 v.
 
 Davis, supra
 
 [301 U. S., 548]. There have been great statesmen in our history who have stood for other views. We will not resurrect the contest. It is now settled by decision.
 
 United States
 
 v.
 
 Butter, supra
 
 [297 U. S., 1]. The conception of the spending power advocated by Hamilton and strongly reinforced by Story has prevailed over that of Madison, which has not been lacking in adherents. Yet difficulties are left when the power is conceded. The line must still be drawn between one welfare and another, between particular and general. Where this shall be placed cannot be known through a formula in advance of the event. There is a middle ground or certainly a penumbra in which discretion is at large. The discretion, however, is not confided to the courts. The discretion belongs to Congress, unless the choice is clearly wrong, a display of arbitrary power, not an exercise of judgment. This is now familiar law. ‘When such a con
 
 *264
 
 tention comes here we naturally require a showing that by no reasonable possibility can the challenged legislation fall within the wide range of discretion permitted to the Congress.’
 
 United States
 
 v.
 
 Butler, supra,
 
 p. 67. Compare
 
 Cincinnati Soap Co.
 
 v.
 
 United States, ante,
 
 p. 308;
 
 United States
 
 v.
 
 Realty Co.,
 
 163 U. S., 427, 440;
 
 Head Money Cases,
 
 112 U. S., 580, 595. Nor is the concept of the general welfare static. Needs that were narrow or parochial a century ago may be interwoven in our day with the well-being of the nation. What is critical or urgent changes with the times.” In this opinion Chief Justice Hughes and Justices Van Devanter, Brandéis, Sutherland, Stone and Roberts concurred.
 

 The principle has application here. The expenditure of money to lift substandard families, who would otherwise be doomed to live under slum conditions, to a higher standard of living, is as much in the interest of the general welfare as is the giving of old-age pensions to help the needy and advanced in years establish and maintain their former standard of living.
 

 The nature of'the use and purpose of the Laurel Homes project is settled in many outside jurisdictions. In
 
 Housing Authority
 
 v.
 
 Higginbotham, supra,
 
 the court, in holding that slum-clearance and low-rent housing are in the nature of a public use, employed this language: “The question has been presented to the courts of last resort in the following jurisdictions and has been determined * * * to be a public use.” Then follows the citation of cases from 19 states. Furthermore, it has been held that the United States cannot lawfully own any property in a proprietary capacity
 
 (Van Brocklin
 
 v.
 
 Tenn., supra),
 
 and that all valid federal action is governmental
 
 (Graves
 
 v.
 
 N. Y., supra).
 
 In the latter case the court said: “Its [the
 
 *265
 
 federal government’s] every action within its constitutional powers is governmental action.” Therefore, according to the many authorities cited and referred to, the present project involved a public use, and the establishment and operation of the Federal Public Housing Authority was an exercise of a governmental function. The inevitable conclusion is that property lawfully owned by the Federal Public Housing Authority (including Laurel Homes) is immune from state taxation except by consent of the federal government.
 

 The federal government, however, has done more than withhold consent. Title 42, Section 1405, paragraph (e), U. S. Code, exempts such projects from state taxation. In its material part it reads at follows:
 

 “The authority [that is, the United States Housing Authority now the Federal Public Housing Authority], including but not limited to its franchise, capital, reserves, surplus, loans, income, assets, and property of any kind, shall be exempt from all taxation now or hereafter imposed by the United States or by any state, county, municipality, or local taxing authority.”1
 

 In addition this state has by statute exempted property of the United States from taxation. Section 5351, General Code (110 Ohio Laws, 78), provided:
 

 “Real or personal property belonging exclusively to the state or United States, and public property used for a public purpose shall be exempt from taxation.” This latter statute, insofar as it relates to federal property, is in accord with similar provisions adopted by most of the states. See case note, 29 L. Ed. 852.
 

 Unless these statutes are unconstitutional and void, there is express provision for tax immunity. To hold that Congress cannot pass such an exemption statute would be to deny federal supremacy in a field which this court has deemed to be within the power bestowed
 
 *266
 
 by the federal Constitution.
 
 State, ex rel. Ellis, City Solicitor,
 
 v.
 
 Sherrill, City Manager, supra.
 
 And, again, though the state may not tax property lawfully owned by the federal government without its consent, there is no reason why a state may not by statute exempt federal property used for a purely public purpose, such as partial relief, in the absence of inhibition by the state constitution. Unless these statutory provisions are declared unconstitutional and void, state taxation upon such property properly and lawfully held by the federal government is forbidden. No such binding declaration has yet been made.
 

 Are the storerooms lawfully owned?
 

 Title 42, Chapter 8, Section 1402, paragraph (9), U. S. Code, a section of the low-rent housing act, provides : ‘ ‘ The term ‘ non-dwelling facilities ’ shall include site development, improvements and facilities located outside building walls (including streets, sidewalks, and sanitary, utility, and other facilities).”
 

 Included in the Laurel Homes project are retail storerooms constructed for the purpose of being leased to private persons at the highest rent obtainable. Nowhere in the federal act is there any provision for non-dwelling facilities of this character. We are, therefore, presented with an instance where the federal government through an agency or instrumentality, without statutory authority, spends federal funds to build buildings to rent for a private purpose in competition with other owners of strictly private property.
 

 The federal government has no power to engage for gain in a purely private enterprise. It is fundamental that the ownership of federal property, not put to a public use but devoted to a gainful pursuit in competition with private business, is in violation of the organic law of the nation.
 
 Van Brocklin
 
 v.
 
 State of Tenn., supra,
 
 at page 159. The government might as well undertake to build a factory or any other building
 
 *267
 
 to lease in competition with the owners of like private property. In the construction and rental of the retail storerooms, there was no public purpose, no element of public utility, no governmental function, no relation to the general welfare.
 

 When, as has been pointed out, the “national government lawfully acts through a corporation, which it owns and controls, * * * tax immunity attaches * *
 
 Graves
 
 v.
 
 New
 
 York,
 
 supra.
 
 Conversely, when the government acts unlawfully through such a medium the immunity does not attach. The construction of the storerooms and the leasing thereof in the manner specified are not undertakings that properly come within the legislative power conferred by the federal Constitution, and Congress has not authorized such a course in the low-rent housing act. That course (being an attempt to hold storeroom property in a nongovernmental or proprietary capacity) was unlawful.
 

 We are forced to the conclusion that the property lawfully included in what is known as the Laurel Homes project is immune from state taxation not only upon principle settled by adjudication but, also, in terms, by statutes, state and federal. The storerooms, however, not being lawfully owned are subject to state taxation to the extent permitted by the state Constitution and required by state statutes.
 

 Zimmerman, J., concurs in the foregoing dissenting opinion.